## SACK, Respondent, v. ST. LOUIS CAR COMPANY, Appellant.

**St. Louis Court of Appeals, May 2, 1905.**

1. **NEGLIGENCE: Duty of Ordinary Care.** Where a workman, employed by a contractor with a car company, was working on the premises of the company, the latter owed the workman the duty of exercising ordinary care to prevent injuring him.

2. ———: ———. In an action against a car company for injuries received by a workman in such case, where the evidence showed that he was engaged with other workmen in building a shed on the premises of the car company, under employment of a contractor with such company, and that while he was raising a girder from the ground to an elevated position on the structure, in a manner that brought it across the company's private track, it was struck by the company's car, which started from a standing position while the girder was in the air, and ran against it in such a way as to throw it and the workman to the ground, causing the injuries sued for, he made out a prima facie case of negligence on the part of the defendant.

3. ———: ———: **Jury Question.** Whether the girder in being raised to its position projected over the track, or by a swaying motion might swing over the track, and whether this condition could have been seen by the motorman and the accident avoided by the exercise of ordinary care, was properly submitted to the jury.

Sack v. Car Co.

4. ———: **General Instruction.** The generality of an instruction will not require a reversal unless it was erroneous or misleading.

5. ———: **Contributory Negligence: Jury Question.** Whether the accident was caused by the contributory negligence of the plaintiff in permitting the girder to swing from its natural position out over the track and thus cause the collision, was a question for the jury.

6. ———: ———: **Burden of Proof.** Where the defendant, in an action for personal injuries, alleged contributory negligence on the part of the plaintiff, the burden was on such defendant to prove the contributory negligence.

7. ———: ———. But it is error to require, in an instruction, the jury to find the plaintiff was injured by his own negligence and not by the negligence of the defendant, in order to establish that defense.

8. ———: ———: **Curing Error.** An instruction in relation to contributory negligence, which was erroneous, was not cured by an explanatory instruction where it would require a mind trained in the law to harmonize the two so that the jury would not be misled.

9. ———: ———: ———: **Harmless Error.** But an erroneous instruction in relation to contributory negligence in such case will not cause a reversal, where there was no substantial evidence of contributory negligence.

10. ———: **Duty of Ordinary Care.** It was the duty of the motorman in the case to hold the car until there was no danger of colliding with the girder.

11. ———: **Contributory Negligence.** It was the duty of the workman to attend to raising the girder, and reasonable care did not require him to divide his attention between his work and the car.

Appeal from St. Louis City Circuit Court.—*Hon. J. W. McElhinney,* Judge.

AFFIRMED.

*Seddon & Holland* for appellant.

(1) The court erred in refusing to give the peremptory instruction asked by defendant at the close of all

the evidence. The said instruction should have been g'ven: (a) Because the petition did not state a cause of action against the defendant, St. Louis Car Company, in that it did not allege that the St. Louis Car Company owed the plaintiff any duty, nor did it allege any facts from which the existence of such duty could be inferred. (b) Because the testimony in the case did not show that the defendant was guilty of any negligence. (c) Be-. cause the plaintiff's testimony showed that the injuries complained of were directly due to his own negligence. Schmidt v. Distilling Co., 90 Mo. 284, 1 S. W. 865, 2 S. W. 417; Barney v. Railroad, 126 Mo. 372, 28 S. W. 1069; Brill v. Eddy, 115 Mo. 596, 22 S. W. 488; State v. Brooks, 99 Mo. 137, 12 S. W. 633; Feary v. Railrood, 162 Mo. 75, 62 S. W. 452; Erwin v. Railroad, 68 S. W. 91; Holmes v. Leading, 69 S. W. 323; Davies v. Railway, 159 Mo. 1, 59 S. W. 982; Tanner v. Railway, 161 Mo. 496, 61 S. W. 826; Sharp v. Railway, 161 Mo. 214, 61 S. W. 829. The court erred in giving the first instruction given at the instance of the plaintiff. Said instruction is set out in full, infra, under heading II of "Argument." Said instruction was erroneous: Because it allows plaintiff to recover for any negligence on the part of the servant of defendant in charge of the dummy car, and does not restrict recovery to the allegation of negligence made in plaintiff's petition. Plaintiff is limited to the allegations of negligence made in his petition, and cannot recover in general for any negligence. Chitty v. Railroad, 148 Mo. 64, 49 S. W. 868; Mc-Manamee v. Railroad, 135 Mo. 440, 37 S. W. 119; Waldhier v. Railroad, 71 Mo. 314; McCarthy v. Hotel Co., 144 Mo. 397, 46 S. W. 172; Adolff v. Pretzel Co., 100 Mo. App. 199, 73 S. W. 321.

*Rassieur & Buder* for respondent.

"The rule of practice is that if a matter material to plaintiff's cause of action be not expressly averred in

the petition, but the same be necessarily implied from what is expressly averred, the defect is cured by verdict. In such case a defendant must make his objection either by demurrer or motion. A plea to the merits waives such an objection." Murphy v. Ins. Co., 70 Mo. App. 82; Bank v. Leyser, 116 Mo. 51, 22 S. W. 504; Hurst v. Ash Grove, 96 Mo. 168, 9 S. W. 631; Bank v. Scalzo, 127 Mo. 164, 29 S. W. 1032; Grove v. Kansas City, 75 Mo. 672; Bower v. Kansas City, 51 Mo. 454.

BLAND, P. J. (after stating the facts).—Respondent, who is a carpenter, was in the employ of Bothe & Ratterman in the spring and summer of 1899, and as such, in July of that year (working for Bothe & Ratterman) was engaged in erecting a shed for the St. Louis Car Company, on its premises in North St. Louis. For its own convenience the car company maintained and operated on its premises, a private electric railway, which ran within about four feet of the shed respondent was helping to erect. In the construction of the framework of the shed posts from fourteen to sixteen feet in length were set and braced. On some of these posts crosspieces were nailed near the top for the workmen to stand on while raising the girders to be placed on top of the posts. The girders were about twenty-two feet long; to raise them, ropes were fastened around each end and then passed up, one to each of two workmen standing on the crosspieces near the top of two posts the proper distance apart. The girders were then pulled up by the men on the posts with the assistance of two other workmen pushing from the ground. Respondent was on one of these posts pulling at a rope to raise a girder, when a dummy car of appellant's came along on its track and struck the girder which was being raised, pushed over the post on which the respondent was standing, throwing him to the ground and causing a very severe and painful sprain of one of his ankles. The action is to recover the damage occasioned by the injury and

was brought against the appellant and Bothe & Ratterman. On the trial respondent took a nonsuit as to Bothe & Ratterman and proceeded against the car company alone. The trial resulted in a verdict for plaintiff for five hundred dollars, from which the car company appealed to the Supreme Court on the ground that a constitutional question was raised. The Supreme Court transferred the cause to this court, holding that it had no jurisdiction of the cause.

The allegation of negligence in the petition against the car company is as follows:

"And plaintiff further states that said defendant, St. Louis Car Company, wholly disregarding and neglecting its duties did, while plaintiff was so working on said post, negligently and carelessly operate one of its cars along said track in such a manner as to cause the same to strike the girder so being hoisted by plaintiff, and that in consequence thereof the post on which this plaintiff was at work was struck with great force and knocked to the ground; that the servant of said St. Louis Car Company, in charge of said car was guilty of negligence in failing to stop the same after he discovered said girder being hoisted and the position of this plaintiff; that the position of said girder in mid air and the position of this plaintiff on said post was seen by said servant in charge of said car, or by the exercise of ordinary care on his part might have been discovered and the collision avoided; that the said collision and the resulting injuries to plaintiff were directly due to the negligence and carelessness of said defendants Bothe & Ratterman and said St. Louis Car Company."

The answer of the car company was a general denial and the following plea of contributory negligence:

"Further answering said defendant states that whatever injuries were sustained by the plaintiff on the occasion mentioned in his petition by and on account of the matters and things in his petition set forth, were

caused by the negligence of plaintiff directly contributing thereto in the following particulars, to-wit:

"First: That the plaintiff in order to raise lumber, carelessly placed himself in a dangerous position by climbing on a post in close proximity to the track described in plaintiff's petition upon which a car was constantly being moved, instead of using a ladder or some other contrivance and placing same at a safe distance from said track.

"Second: Also in this, that plaintiff, while resting on said post carelessly and negligently, attempted to raise material with a rope, when by so doing the material thus being raised was apt to swing toward and over the track mentioned in plaintiff's petition immediately in front of an approaching car, and did, in fact, so swing toward and over said track at the time mentioned in plaintiff's petition immediately in front of an approaching car.

"This defendant states that the above mentioned negligence of plaintiff directly contributed to cause whatever injuries were sustained by plaintiff on the occasion mentioned in his petition."

Respondent's evidence shows that he had been working on the premises of the appellant for two or three months prior to his injury, and just previous thereto had been engaged in erecting a shed north of and on the opposite side of the track from the one on which he was at work when injured, that he had frequently seen the car going up and down the track and knew that it was in almost constant operation. The car which struck the girder was a flat dummy car with framework on the front part on which a trolley was fastened, extending to a trolley wire above. The superstructure consisted of two posts about thirty inches apart on either side of the car. Respondent's evidence tends to show that in raising a girder with ropes, in the manner indicated, the tendency of the girder was to swing or sway back and forth

in proportion as one end was raised higher than the other. The post on which respondent was standing was the north post of the shed and stood within about four feet of the railroad track. The uprights of the car projected about twelve inches over the rails of the track, and respondent testified that the rope he was pulling on was tied from three to three and one-half feet from the end for the purpose of giving the girder its proper extension beyond the post when placed thereon. The evidence tends to show that the girder was raised about three-fourths of the way up when it was struck by the car and that respondent and the post were thrown to the ground by the force of the collision. If the respondent is correct in his estimate of the distance the rope was fastened from the end of the girder, then the girder was in a position to be struck by the passing car without swaying to the north at all. Respondent also testified that when he took his position on the post he saw the car standing still, saw Henry Stertmann (the motorman) get on the car and take hold of the motor, but did not watch the car and did not see it start; that the accident happened within one or two minutes after he got on the post.

Henry Stertmann testified, substantially, as follows:

He was foreman of the lumber yard of the St. Louis Car Company, and it was part of his duty at the time mentioned in the evidence to run the dummy car up and down the track. The girder was twenty-two feet long. When the witness got on the dummy car it was standing fifteen or twenty feet west of the post upon which the plaintiff was working. Witness got on and started the car slowly and had one brake in his hand, and when he got four feet from the post where plaintiff was standing he stopped his car, and saw that he had eight inches room between the end of the girder and the beam upright on the side of his car. In other words, there was eight inches clearance between the girder and the car.

He then stepped back and took the motor in one hand and the brake in the other. There were two posts erected on the front of the car. The first post passed the end of the girder, but before the second post passed the girder swung in front of the second post and was struck. The said two posts of the car were about thirty inches apart. The car ran two or three feet after it struck the girder. The said girder was the first one that the witness had ever seen the men hoisting. After the accident witness went up to the plaintiff and told him that he felt sorry for what had happened.

Upon cross-examination witness stated that when he got on the dummy car the girder had been raised about eight feet, and there was nothing to prevent him from looking forward and seeing the girder.

Other witnesses testified that the front upright of the car struck the girder a glancing blow, as was shown by marks on it after the accident, and that the second upright pushed the post over.

E. E. Norton testified that he was working with respondent at the time of the accident, helping to raise the girder; that he put a ladder up against the post to assist respondent in raising his end of the girder and was on the ladder with the girder on his shoulder at the time the accident happened, and if there was any swaying of the girder, he could not see how it could have been as it would have swung him off the ladder, and nothing of the kind happened.

Appellant offered an instruction in the nature of a demurrer to the evidence which the court refused.

For respondent the court gave the following instructions to which appellant objected:

"1. The court instructs the jury that if you find and believe from the evidence that plaintiff, Gotlieb Sack, was, on the occasion in question, at work in the premises of the defendant, the St. Louis Car Company, in the construction of a shed, and engaged with other employees of Bothe & Ratterman, in hoisting or raising a

wooden girder to the top of some posts forming part of the frame work of said shed; and that plaintiff was at the time standing on a piece of wood nailed at or near the top of one of said posts, and if you further find and believe from the evidence that the defendant, the St. Louis Car Company, at the time maintained a private railroad track and operated an electric car thereon near to the post on which the plaintiff was at the time engaged; and if you further find and believe from the evidence that while the plaintiff and his fellow-workmen were engaged in hoisting said girder by ropes and other means, and while the same was in mid air alongside of the said post, the end thereof to the north, projected beyond the post on which the plaintiff was standing and towards the said railroad track of the defendant, and that while said girder was in said position and without and fault or negligence on the part of the plaintiff or his fellow-workmen engaged with him in the said work, the said girder was struck by the said electric car of the defendant and that it was so struck by reason of the carelessness or negligence of the servant of said defendant, then and there having charge and control of said car; and if you further find and believe from the evidence that the consequence of said striking of said girder the post on which the plaintiff was at work was struck by said girder and knocked to the ground and that plaintiff was thrown to the ground on account thereof and sustained the injuries complained of, then you should find a verdict in favor of the plaintiff.

"2. The jury are instructed that although they may believe that the car which caused the injury, if any, to plaintiff, was standing on the track of defendant's road a short distance from where plaintiff was at work, and that plaintiff may have seen a person get onto the car and take charge of it, yet if the jury further believe that the plaintiff and the work he was engaged in doing was in plain sight of said person taking charge of the car, then plaintiff had a right to assume that said

person saw him and the work at which he was engaged, and that he would exercise ordinary care in the operation of the car.

"And if the jury further believe that at the time the said car was started by the said person in charge thereof from its said standing position, the plaintiff was on or near the top of the post situated near the track on which said car was operated, engaged in hoisting a timber to the top of said post, and that said timber projected over or towards the said track, or that by any swinging motion thereof, it might extend over or towards said track so as to come in either case in contact with any car run along said track, and that the said person in charge of said car either did see, or by the exercise of ordinary care might have seen, that by running said car along said track said car would come in contact with said timber, or be in danger of coming in contact therewith, then said person in charge of said car was negligent if the jury believe he run said car along said track so as to come in contact with said timber.

"And if the jury further believe that the said person in charge of said car was an employee of defendant and in the discharge of his ordinary duty as such employee while in charge of said car, and that he did run said car and come in contact with said timber under the circumstances hereinbefore detailed, and that by said car so coming in contact with said timber plaintiff was thrown to the ground and injured, without any negligence on his part, then the verdict must be for the plaintiff.

"3. The court instructs the jury that if they find and believe from the evidence that the St. Louis Car Company, on the occasion in question, was operating an electric car on its premises, and that its servant in charge of, managing and controlling its said car, permitted the same to strike the beam or girder being hoisted by plaintiff, if you find that plaintiff was so hoisting a girder and that the same was struck, and if

you further find and believe from the evidence that said servant by the exercise of ordinary care on his part might have avoided a collision of said car with the beam or girder so being hoisted by plaintiff, and that said collision could not have been avoided by the exercise of ordinary care on part of plaintiff, then you will find a verdict in favor of plaintiff and against the defendant St. Louis Car Company.

"4. In this case defendant claims that plaintiff was injured by his own negligence contributing to such injury. The burden is on the defendant to establish to the satisfaction of the jury by the greater weight of the evidence that plaintiff was injured by his own negligence and not by the negligence of the person in charge of defendant's car, and unless the jury so believe they will find against the defendant on the question of plaintiff's contributory negligence.

"5. What constitutes 'ordinary care', as mentioned in these instructions, depends on the facts of each particular case. It is such care as a person of ordinary prudence would exercise (according to the usual and general experience of mankind) in the same situation and circumstances as those of the person or persons in this case with reference to whom the term 'ordinary care' is used in these instructions. The omission of such care is negligence in the sense in which that word is used in these instructions."

1. Appellant contends that respondent should have been nonsuited for two reasons: First, because it owed him no duty; second, because his own evidence conclusively shows that he was guilty of contributory negligence. The facts show that appellant owed the respondent the duty to exercise ordinary care to prevent injuring him with its car, and the defense was made in the trial court on this theory. A different theory will not be considered on the appeal. The respondent's evidence tends to show that the car, which struck the girder and caused his injury, was standing still when he got on the post

and was not started up for a minute or more after he got on the post and was in the act of helping raise the girder. The evidence does not show or tend to show that he or his coemployees, in raising the girder, swung it toward the track and negligently brought it into a position to be struck. On the contrary the evidence tends to show that the girder was not swung or swayed at all but that its natural or level position was such as to bring it within the range of the car. If this is so, then it was the duty of the motorman to have stopped the car until the girder was raised above its reach, and it follows that the injury was caused by his negligence. In this view of the evidence, we think the respondent made out a clear prima facie case and that appellant's motion for a compulsory nonsuit was properly overruled.

2. The objection urged against respondent's first instruction is that it allows a recovery for any negligence on the part of the motorman in charge of the appellant's car and is broader than the allegation of negligence in the petition, and for this reason is erroneous. The instruction confined the respondent's right to recover to the negligence of the motorman in running the car against the girder. The petition alleged that appellant negligently and carelessly operated one of its cars in such manner as to cause the same to strike the girder. The instruction is not in the same language as the petition but the negligence alleged and the negligence submitted by the instruction correspond, in fact, are identical.

3. In support of its objection to instruction numbered 2, given for respondent, appellant cites, especially, Culbertson v. Railway, 140 Mo. 35, 36 S. W. 834. In the Culbertson case it was held that the evidence showed that plaintiff's intestate was guilty of such contributory negligence as to preclude her right to recover, and the judgment was reversed without remanding the case. The instruction is predicated upon that feature of the evidence which tends to show that a girder being raised,

as was the one struck by the car, would so project over towards the track as to come in contact with a car, should one be running on the track. We think, under the evidence, respondent was entitled to have this feature of the case submitted to the jury and that it was properly submitted by instruction numbered 2.

4. The objections to the third instruction are, first, that it is too general, and second, that there is no evidence that respondent could have avoided the injury by the exercise of ordinary care. The generality of the instruction would not call for a reversal of the judgment unless it was erroneous or misleading. It is neither. In respect to the second objection to the instruction, we take a view of the evidence radically different from that of appellant's learned counsel. The only evidence having any tendency to prove contributory negligence is that of the motorman who testified, in substance, that the girder was swung out over the track as the car was passing and after he had seen that he could run the car by without coming in contact with the girder. The evidence of all the other witnesses, and especially that of Norton, is that it was not swung toward the track but that the projection that was given it from the time it started from the ground sent the end over or so near the track as to be in reach of a passing car. It is not, therefore, conclusive that respondent was guilty of contributory negligence as the car was standing still at the time he and his coworkers began to raise the girder, and he had a right to assume that it would not be negligently run against the girder while it was being raised.

5. Respondent's fourth instruction, in effect, told the jury that one of the appellant's defenses was contributory negligence and before they could find for appellant on this defense, they should find by the greater weight of the evidence that respondent was injured by his own negligence and not by the negligence of the persons in charge of appellant's car. Bearing on the de-

fense of contributory negligence, the court, at the instance of appellant, gave the following instruction:

"H. The court instructs the jury that if you believe from the evidence that if the plaintiff and his coworkers could have raised the beam in question in a safe way, and nevertheless adopted the method used by them on the occasion in question, and if you further believe that the method adopted by them was dangerous and that the danger thereof was obvious to plaintiff, and that the plaintiff in adopting said method under said circumstances was guilty of negligence and that such negligence continued down to the time of plaintiff's fall and directly contributed thereto, then and in that case your verdict must be for the defendant."

This instruction correctly declared the law in respect to the defense of contributory negligence. Respondent's instruction numbered 4 properly declared that the burden of proof was on the appellant to make out this defense. To this extent it is correct, but to establish the defense the instruction required the jury to find that respondent was injured by his own negligence and not by the negligence of the person in charge of the car. Respondent's counsel concedes the instruction is open to criticism, but insists that when read in connection with appellant's instruction numbered H, supra, the jury could not have been led to believe that to find for appellant, they must find that respondent's injuries were caused by his sole negligence; that taking the two instructions together, the jury must have concluded that if they found respondent was negligent at all and that his negligence contributed directly to his injury, they should find the issue of contributory negligence for appellant. A mind trained in the law would so construe and harmonize the two instructions, but we doubt very seriously if a jury would so do, on the contrary, we are inclined to the opinion that the average juryman, on reading the instruction, would conclude that to find for the appellant on the ground of contributory negligence,

he would have to believe and find that the respondent's injury was caused by his sole negligence and that the person in charge of the car was not negligent at all, that is, that the respondent was solely and wholly to blame. If there was any substantial evidence that respondent was careless, we would reverse the judgment for the error in this instruction.

Plaintiff's deposition was taken before the trial. In his deposition he testified that "in pulling the girder up it swayed sideways, and swayed in front of the car just at the time the car struck it and forced it against the post, causing the post to fall." In his evidence, as given at the trial, plaintiff said he did not know whether the girder swung out or not when it was hit by the car, that he was pulling on the rope and did not watch the car. Now suppose the girder did sway out in front of the car? The evidence shows that in pulling on the rope the girder would sway back and forth; everyone knows it would from ordinary observation, and the motorman knew it as well as the plaintiff and knew when he stopped the car within six or eight feet of where the men were working that the girder was being raised and was liable to swing out in front of his car. In these circumstances, whose duty was it to wait a minute? The duty of the men on the posts under the strain of holding the girder stationary while waiting for the car to pass, or the duty of the motorman to keep his hands off the power lever for a moment while the men raised the girder above the top of the car? It seems to us the answer to this question is plain and that it was the duty of the motorman to have held his car until there would be no danger of colliding with the girder. The plaintiff was ten or twelve feet from the ground on the post, pulling on the rope. A coworker was on another post, pulling on another rope tied around the other end of the girder. Two other men were beneath them helping to raise the girder. This situation shows that it was the duty of the men engaged in raising the girder to give the

work their undivided attention in order to prevent the girder from slipping from their control and falling and injuring some one or more of the men, and we do not think, in these circumstances, the plaintiff was required to divide his attention between his work and the car, but that it was the duty of the motorman to exercise reasonable care to avoid striking the girder. Did he exercise reasonable care in the circumstances? We do not think so. On the contrary, we think his own evidence convicts him of negligence. He stopped the car when within six or eight feet of the girder because he was doubtful whether or not there was room to pass. Did he take reasonable precaution to ascertain whether or not there was room to pass? We think not. He said he looked and estimated that he had eight inches of margin and, on this mere guess, turned on the power and ran his car against the girder.

Ordinary prudence would have withheld his hand for a moment, until the men could have raised the girder above the reach of the car. It seems to us that his conduct was not only negligent, but that it ought to be characterized as reckless, and we think the plaintiff's injury is attributable solely to the motorman's negligence, hence the erroneous instruction on contributory negligence given by the court does not call for a reversal of the judgment. The judgment is affirmed. All concur.