FEDDECK, Respondent, v. ST. LOUIS CAR COM-
PANY, Appellant.

St. Louis Court of Appeals, May 14, 1907.

1. **NEGLIGENCE: Ordinary Care: Injury to Employee of Inde-
   pendent Contractor.** In an action by a carpenter employed by
   a contractor who had a contract with the defendant to build an
   addition to its car shops, for injuries caused by the negligence
   of the defendants' employees in running a motor car into the
   unfinished addition in such a way as to dislodge certain loose
   girders causing them to fall upon plaintiff, the evidence is ex-
   amined and held sufficient to submit to the jury the question
   of whether the defendant's employees exercised ordinary care
   in the management of the car which caused the damage.

2. ———: ———: **Proximate Cause.** The proximate cause of an
   injury such as to create a liability for damage resulting does
   not necessarily mean that cause which is nearest in time or
   space to the result, but it means the active and efficient cause
   of those consequences which might have been anticipated by a
   person of ordinary prudence.

3. ———: **Defining Negligence: Instruction.** It is not error to
   give an instruction asked by plaintiff authorizing a recovery for
   injuries caused by the negligence of the defendant without de-
   fining negligence, where the court of its own motion gives an
   instruction correctly defining the meaning of the term.

4. ———: **Pleading and Proof: Instruction.** Where plaintiff
   in an action for damages caused by the negligence of the de-
   fendant pleads several acts of negligence, he may recover by
   proof of one as the cause of the injury and it is not necessary
   to instruct the jury as to those acts of negligence alleged but
   not proven.

5. ———: **Contributory Negligence: Emergency.** One who is
   placed in a situation of apparent imminent peril,
   by the negligence of another is not negligent by using bad
   judgment and discretion in his attempt to escape; not having
   time to deliberate, he may run into danger instead of out of it,
   without being guilty of contributory negligence. An instruction
   applying the principle to a given state of facts is not a com-
   mentary upon the evidence.

6. **PERSONAL INJURIES: Excessive Verdict.** Where a carpen-
   ter earning $25 a week was knocked insensible, had three ribs
   broken, was disabled for eight weeks and suffered considerable

pain and was out nothing for medicine, medical attention or nursing, a verdict for $3,000 in an action for such injuries was excessive. The court orders a remittitur of $1,000.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

REVERSED AND REMANDED *nisi.*

*W. E. Fisse* for appellant.

*Lee A. Hall* and *Frank H. Haskins* for respondent.

(1) The demurrer of defendant St. Louis Car Company, offered at the end of plaintiff's case, was properly overruled. Sacks v. Car Co., 87 S. W. 80. (2) This case comes within the doctrine of *res ipsa loquitur.* Dougherty v. Railroad, 81 Mo. 329. (3) Appellant cannot complain that the court sustained the demurrer 'of Ratterman Building & Contracting Company. (4) Plaintiff's instruction No. 1 was properly given. (5) Plaintiff's instruction No. 2 is a correct statement of the law, and was warranted by the evidence. Kleiber v. Railway, 107 Mo. 247. (6) Although two or more parties may be named as defendants, one alone may be found guilty of negligence. O'Shea v. Kirker, 17 N. Y. Sup. Ct. 120. (7) Although two defendants are charged as having jointly committed a tort, one alone may be held for the tort. Carpenter v. Lee, 13 Tenn. 265. (8) It is not necessary to prove all the grounds of negligence alleged in the petition, but proof of one as the proximate cause of the injury is sufficient. O'Connor v. Boston & L. R. Corp., 135 Mass. 352.

STATEMENT.—The defendant company, a corporation, owns and operates extensive car shops at Baden (North St. Louis) Missouri. In the spring of 1903, the Raterman Building and Contracting Company, a corporation, was engaged, under contract, in building an

addition to defendant's car shops. Connecting with the railroad terminals at Baden, and also with the Mississippi river, defendant maintained railroad tracks on its yards and into some of its shops, which were operated by electric power, to transfer cars to and from its shops to the railroad terminals. Defendant used a motor cab, or "dummy," and overhead trolley wires to propel its cars over its tracks. On either end of the dummy was a trolley pole secured by separate fastenings. These poles, when pulled down, extended slightly beyond the end of the dummy. But one pole (the rear one) was used at a time to furnish motor power to the dummy. The other pole, the front one, was pulled down far enough to pass under the overhead cross wires but not low enough to come in contact with a box car when coupled to or pushed by the dummy. The distance the pole should be pulled down was regulated by the length of the trolley rope. When pulled down, the pole was held in place by an iron hook permanently tied to the end of the trolley rope, and hooked under the handrail of the platform of the dummy. A track ran into the addition the Raterman Company was erecting, and the material for the construction of the addition was delivered by defendant in carload lots on this track. On April 20, 1903, the posts and girders of the addition had been put up and a number of joists had been raised and laid loosely, in bunches, on the girders. A log chain, supposedly used in raising the joists, was suspended over the railroad track. In the east end of the addition and over the track, a doorway had been left, over which a lintel had been placed. This lintel and the joists were several inches lower than the trolley wire. Defendant's employees were ordered to deliver two carloads of brick in the addition. The brick was loaded in box cars. The grade of the track ascended from the east toward the west. On account of the lintel and joists being lower than the trolley wire, the trolley pole used to furnish power should have been pulled down

to avoid coming in contact with the lintel or the joists. Defendant's servants undertook to push the carloads of brick into the addition with the dummy. The cars were about one hundred feet east of the east entrance to the addition. For the purpose of gaining speed and momentum sufficient to land the cars at the point desired, full power was turned on. According to plaintiff's evidence, the rear trolley pole (the one furnishing power to the motor) was not pulled down quick enough and it struck the lintel and passed under it, the jar of the collision causing the front pole to fly up, where it became entangled in the log chain and loose joists, causing a number of the latter to fall. Plaintiff was working below, near the track, heard the crash, and at the same time a voice calling: "Look out!" He sprang forward but before he could get out of the way, one of the falling joists struck him over the eye, knocking him down, and after he was down another joist fell on his back. Plaintiff was knocked unconscious and three of his ribs broken. The action was to recover for these injuries and was brought against both defendant and the Raterman Company. On the trial plaintiff took a nonsuit as to the latter company and proceeded against defendant. The trial resulted in a judgment for $3,000 against defendant. The appeal is from this judgment.

The injury happened on Monday. Plaintiff, a carpenter, had been employed by the Raterman Company on the preceding Saturday, and at the time he was injured was engaged, with other employees, in picking out and sorting joists from a large pile which had been brought in and unloaded near defendant's tracks.

The chief allegation of negligence in the petition, and the one upon which plaintiff relied for a recovery on the trial, is as follows:

"Plaintiff states that on the afternoon of said twentieth day of April, 1903, while plaintiff was working near the track aforesaid, engaged in discharging his du-

ties assigned to him by defendant Raterman Building and Contracting Company, the agents, servants and employees of defendant St. Louis Car Company, in charge of the cars aforesaid, carelessly and negligently attempted without warning to plaintiff to run said cars along said track past said girders resting on said posts or columns, as aforesaid, into said addition, and while so doing a trolley pole on said cars came in contact with said girders extending across said track, as aforesaid, whereby the loose joists resting thereon, as aforesaid, were jarred and thrown out of position and fell, striking plaintiff on the head and on the body, knocking him senseless and otherwise injuring him externally and internally."

The answer was a general denial and the following plea of contributory negligence.

"Further answering said petition, this defendant says, that the plaintiff by his own negligence and carelessness directly contributed to causing the injuries complained of in the petition, in this, to-wit, that he negligently and carelessly conducted himself in and about the place at which he was employed at the time stated in the petition, and where he was injured, as alleged, and negligently and carelessly failed to place himself in a position of safety upon the approach of the car mentioned in the petition, of the approach of which car, this defendant says, the plaintiff had full knowledge and information, or full opportunity to obtain and acquire knowledge and information and by the exercise of reasonable and ordinary care to provide for his own safety."

The evidence shows that plaintiff had worked at the shops on and off for a number of years and knew of the existence of the railroad tracks, trolley wires, etc. Before the cars were pushed in, the tracks were cleared of debris by the employees of both companies. Plaintiff, however, took no part in this work, and testified that

he did not know the cars were going to be pushed in, knew nothing of the matter until he heard the crash and the warning to "Look out!" The bell of the dummy was not rung, and plaintiff's evidence tends to show he had no warning whatever of the approach of the cars until the crash came, when he heard some one halloo "Look out;" that he then tried to save himself by running out of the building, but was too late. He was not working on the track or so near it as to be in danger of being struck by the cars. The evidence shows that no one in the building apprehended the trolley pole would come in contact with the loose joists, and no danger of the joists falling was anticipated. Some of the evidence tends to show that when plaintiff was warned and heard the crash, in his effort to escape, he ran in the direction of the falling joists.

At the close of plaintiff's evidence defendant offered a demurrer thereto. Defendant, however, did not stand on its demurrer, but offered evidence on its own behalf which tends to show that one of defendant's employees, engaged in operating the dummy, after the track was cleared of obstructions, warned all persons within hearing that they were going to shove the cars in, and that he, individually, warned plaintiff twice to "Look out for the cars," which they were going to shove in immediately. The defendant's servants observed the trolley wire was above the lintel and joists and knew, therefore, that the trolley pole in use would have to be pulled down in time to prevent it striking the lintel; for this reason, and for the reason the grade was ascending, they turned on full power (360 horse power) to give the cars of brick sufficient headway to land them at the desired point. Their evidence is that the rear trolley pole was lowered in time to pass under the lintel and did not come in contact with it, but the end of the front trolley pole, which was pulled down, caught in the depending log chain, became entangled with it, and pried or pushed off the loose joists.

Plaintiff, in rebuttal, as also one of his witnesses, testified that no warning was given that the cars were going to be pushed in, and neither of defendant's servants spoke to plaintiff on the subject.

BLAND, P. J., (after stating the facts).—1. Whether or not the case should have been taken from the jury should be determined from all the evidence, for some of the facts and circumstances left in doubt by plaintiff's evidence are made clear by that of the defendant; especially, does defendant's evidence show that its employees knew the trolley wire was above the lintel and the joists; that they were inside the addition, went over the track and cleared it of obstructions, and viewed, or had the opportunity to view, the entire surroundings and learn the exact situation. This was to be the first effort to push cars in after the joists were up, hence defendant's servants were required to make observations and learn the situation; and we think they did this and knew the joists were not permanently in place but were on the girders in bunches, preparatory to being put in place. A description of the situation and knowledge of what was to be done, we think show that ordinary care should have been exercised by defendant's servants in shoving the two carloads of brick into the addition, to avoid damage to the incomplete structure as well as injury to the men working thereon. [Sack v. St. Louis Car Co., 87 S. W. 79.] The principal question, therefore, on the demurrer to the evidence, is to determine whether or not the evidence was sufficient to authorize the circuit court to submit to the jury to find whether or not, in the circumstances enumerated, defendant's servants exercised ordinary care in the performance of the work assigned to them by defendant. On the defendant's evidence, that its servants knew the rear trolley pole would come in contact with the lintel, if it was not pulled down in time; and on that of plaintiff, that the pole was not

pulled down but was allowed to come in contact with
the lintel, causing a shock sufficient to loosen the hook
holding the front pole down, which pole flew up, when
released, and pushed off the loose joists, causing injury
to plaintiff, we think was sufficient to warrant the court
to submit to the jury to find whether or not defendant
was guilty of negligence; provided the negligence of de-
fendant's servants was the proximate cause of the in-
jury.

Quoting from Freeman v. Accident Association, 156
Mass. 315, the Supreme Court, in Fetter v. Fidelity &
Casualty Co., 174 Mo. 1. c. 267-8, 73 S. W. 592, said:

"Where different forces and conditions concur in
producing a result, it is often difficult to determine which
is properly to be considered the cause, and, in dealing
with such cases, the maxim, *causa proxima non remota
spectatur*, is applied. But this does not mean that the
cause or condition which is nearest in time or space to
the result is necessarily to be deemed the proximate
cause. It means that the law will not go farther back
in the line of causation than to find the active, efficient,
procuring cause, of which the event under consideration
is a natural and probable consequence, in view of the
existing circumstances and conditions. The law does not
consider the cause of causes beyond seeking the efficient
predominant cause, which following it no farther than
those consequences that might have been anticipated as
not unlikely to result from it, has produced the effect.
An injury which might naturally produce death in a
person of a certain temperament or state of health is
the cause of his death, if he dies by reason of it, even if
he would not have died if his temperament or previous
health had been different; and this is so, as well when
death comes through the medium of a disease directly
induced by the injury, as when the injury immediately
interrupts the vital processes."

In Paden v. Van Blarcom, 100 Mo. App. 1. c. 192-3,

74 S. W. 124, we said: "Where negligence is alleged as a cause of injury, the test of defendant's liability is that the consequences of the act complained of were such as in the surrounding circumstances of the case might and ought to have been foreseen by the defendant. [Poeppers v. Railroad, 67 Mo. 715; Stanley v. Railroad, 114 Mo. 606, 21 S. W. 832; Railroad v. Hope, 80 Pa. St. 373; Railroad v. Stanford, 12 Kan. 354; Doggett v. Railway, 78 N. C. 305; Ehrgott v. Mayor, etc., of N. Y., 96 N. Y. 264.]"

In Aldrich v. St. Louis Transit Co., 101 Mo. App. l. c. 90, GOODE, J., said: "We must guard against events which, according to experience, may be expected to happen, but not those due to strange and abnormal behavior, or those which are possible but quite improbable. [American Brewing Assn. v. Talbot, 141 Mo. 674, 42 S. W. 679; Fuchs v. St. Louis, 133 Mo. 168, 31 S. W. 115, 34 S. W. 508.]"

Where the particular consequences are not intended or foreseen, the meaning of proximate cause, says Pollock, "are those consequences which a person of average competence and knowledge, being in like case with the person whose conduct is complained of, and having the like opportunities of observation, might be expected to foresee as likely to follow upon such conduct." [Webb's Pollock on Torts, p. 32.] After noting the difficulty felt by the courts in attempting to lay down a rule to cover all possible cases, Shearman and Redfield say: "A person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed (whether they could have been ascertained by reasonable diligence or not) would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind." [1 Shearman & Redfield on Negligence, sec. 29.] Where there is doubt as to whether or not a reasonably prudent

person would have thought it reasonably possible the consequences would follow that did follow from the negligence complained of, the question of proximate cause is one for the jury, if, as in this case, there was an unbroken connection between the negligent act of defendant and the injury to plaintiff, though the particular injury was not foreseen and would not ordinarily have occurred. We conclude that the case was one for the jury.

2. The court gave the following instruction for plaintiff:

"1. The court instructs the jury that if you believe from the evidence that on or about April 18, 1903, plaintiff was employed by defendant Raterman Building & Contracting Company to work as a journeyman carpenter in a building being erected for St. Louis Car Company, that near the place where plaintiff was directed by his said employer to work, and was at work, joists had been placed loosely overhead on girders and underneath a trolley wire which was part of the equipment of an electric road operated in said building by defendant St. Louis Car Company, and if you further believe that while the joists were in position as aforesaid, and whilst plaintiff was at work at said place, defendant the St. Louis Car Company attempted to, and did, without the knowledge of plaintiff, negligently run its car under the said loose joists and girders in said building without warning plaintiff of its intention to do so, and through the negligence of defendant St. Louis Car Company, the trolley of said car came into contact with the girders aforesaid, causing the joists to fall and strike plaintiff, injuring him, then your verdict must be in favor of plaintiff and against defendant St. Louis Car Company, even if you also find that concurring negligence on the part of Raterman Building & Contracting Company contributed to cause said injuries, provided you further find

from the evidence that plaintiff was not himself guilty of negligence directly contributing to cause the injuries.

"And unless you so find for plaintiff your verdict should be for the defendant St. Louis Car Company."

The court gave the following instruction of its own motion.

"1. What constitutes 'ordinary care' as mentioned in these instructions depends on the facts of each particular case. It is such care as a person of ordinary prudence would exercise (according to the usual and general experience of mankind) in the same situation and circumstances as those of the person or persons in this case with reference to whom the term 'ordinary care' is used in these instructions. The omission of such care is negligence in the sense in which that word is used in these instructions."

Defendant objects to instruction No. 1 (asked by plaintiff) for the reason it does not define negligence. The objection would be well taken but for the instruction given by the court of its own motion, which correctly defines the meaning of the term. It is also contended that the instruction ignores the averments of negligence in the petition. The instruction is predicated upon the specific act of negligence pleaded and set out in the statement of the case, the only negligent act of which any proof was offered and which in itself states a good cause of action. Plaintiff was not required to prove any other of the specified acts of negligence charged in the petition, nor was it the duty of the court to call the attention of the jury to those averments about which there was no evidence. It is further insisted by defendant that the instruction is erroneous for the reason there is no evidence tending to show defendant had any knowledge that plaintiff was in a dangerous situation or that the joists were loose from the girders. The evidence of defendant's servants is opposed to this contention. They were both inside the addition before the cars were pushed

in, made observations of the surroundings, as it was their duty to do, and, as negligence is not to be imputed to them, in the absence of proof, the presumption should be indulged that they knew the joists were loose from the girders, and must have known that if struck by a trolley pole, they might be thrown down and injure some one. The instruction is faulty in submitting for the consideration of the jury the question of the negligence of the Raterman Company, as that question had been withdrawn by plaintiff's nonsuit; and for the further reason there is not a scrap of evidence tending to show it was guilty of negligence. The error was a harmless one as it in nowise enlarged defendant's liability. [Sack v. St. Louis Car Company, supra.]

3. Plaintiff's second instruction is as follows:

"2. The court instructs the jury that if one by the negligence of another has been placed in a situation of apparent imminent peril, he is not required, in attempting to escape therefrom to use the judgment and discretion that is required of him when not dominated by terror or impending danger. And if you believe from the evidence that plaintiff, through the negligence of defendant, was in a position where, under the circumstances shown in evidence, he might and did reasonably apprehend peril from falling timbers and had no time or opportunity to deliberate, and while exercising such care to avoid the peril as a person of ordinary prudence would usually exercise under similar circumstances, he ran under the falling timbers and was injured by them; then the fact that he ran under said timbers instead of away from them will not constitute contributory negligence on the part of the plaintiff, even if you believe from the evidence that if he had not run under the timbers, or had chosen another means of escape, he would not have been injured."

Defendant contends that this instruction is a comment on the evidence and is otherwise erroneous. It is

not a comment on the evidence. Evidently, it was given on account of the slight evidence, that plaintiff, when he heard the crash and the warning to "Look out," ran toward instead of away from the falling joists. Plaintiff's evidence shows that he was startled by the sudden crash and the warning, and his first thought was to flee from the building, as he did not know what had or would happen. Under this state of the evidence, the instruction is in harmony with the ruling of the Supreme Court in Kleiber v. Railway, 107 Mo. 240, 17 S. W. 946, where at page 247, the court said:

"It is as well settled as any other principle of the law of negligence that, if one, by the negligence of another, has been placed in a situation of apparent imminent peril, he is not required, in attempting to escape therefrom, to use the judgment and discretion that is required of him when not dominated by terror of impending danger; and if, without having time to deliberate, and acting upon the instinct of self-preservation, and as a prudent person might be expected to act in the circumstances, he is injured by adopting a dangerous alternative, he may still recover from the one by whose negligence he has been impelled to act. This is true, though no injury would have resulted had no attempt to escape been made. [Beach on Contrib. Neg., p. 43, and cases cited; Whittaker's Smith's Neg., sec. 392; Jones v. Boyce, 1 Stark. 493; Stokes v. Salstonstall, 13 Peters 181; 2 Shearm. & Redf. on Neg., sec. 477.]"

4. The final contention of defendant is, that the damages are excessive. Plaintiff was earning twenty-five dollars a week. He was disabled from working for about eight weeks. He was not out anything for medicine, medical attention or for nursing. He earned the same wages after as before the injury. He testified that he suffered from dizziness after the injury, and on this account could not work on the roof or high places about a building; to the contrary, it was shown that he had

done such work after the injury, without complaint or objection.  He testified that he could not lift, that to lift hurt his side where his rib had been broken.  He testified that he was forty-eight years old and could not see to read by gas or lamplight after the injury, without using glasses but could see to work.  He testified that he suffered a great deal of pain while in the hospital undergoing treatment for his injury.  No physician testified as to the extent of plaintiff's injury.  The use of glasses to read by an artificial light, does not prove that plaintiff's eyesight was damaged by the injury, as most men of his age have to do as he does—use glasses to read by gas or lamplight.  Broken ribs, after they are properly healed, do not permanently impair one's physical strength.  Doubtless, plaintiff suffered great physical pain for a few weeks.  He lost about two hundred dollars in wages.  The jury were not authorized to find present damages for future consequences of the injury, for the reason there was no evidence to justify the submission of this element of damages.  In this state of the case, it seems to us the damages are excessive, and while the writer feels a great reluctance to interfere with the verdicts of juries in such matters, and deprecates what to him seems to be an unwarranted practice established by the precedents in this State, of ordering remittiturs where the verdict is manifestly excessive, instead of sending the case back to the trial court to have the damages assessed by another jury, we feel bound to follow the precedents and to order a remittitur in a proper case.  We think two thousand dollars would amply compensate plaintiff for all the damages he suffered on account of the injury, therefore, it is ordered and considered that unless plaintiff remits one thousand dollars of his judgment within ten days from the filing of this opinion, the judgment will be reversed and the cause remanded; if the remittitur is entered as herein indicated, the judgment for two thousand dollars will be in all things affirmed, to bear the

legal rate of interest from the date of its rendition in the circuit court. All concur.