WILLIAM MOUDY, Respondent, v. ST. LOUIS DRESSED BEEF & PROVISION COMPANY, Appellant.

Springfield Court of Appeals, July 7, 1910.

1. **DEPOSITIONS: Evidence.** Under section 2904, Revised Statutes of 1899, it is provided that facts authorizing the reading of a deposition may be established by the deposing witness; but it has been held that the statement of the witness in his deposition that he was about to change his domicile, is not sufficient of itself to admit the deposition in evidence; however, very slight evidence that he did leave and had not returned will be sufficient, in connection with the witness's declaration of his intention to go to authorize the reading of the deposition. Evidence in this case *held* sufficient to authorize the introduction of the deposition.

2. **INSTRUCTIONS: Refusal to Give: Harmless Error.** The refusal of a proper instruction requested by the appellant will not be a reversible error, where the court gives an instruction correctly declaring the law and covering substantially the same question.

3. **NEGLIGENCE: Personal Injuries: Failure to Examine Brakes on Car.** The servants of defendant, a packing company, attempted to move a meat car with a horse and tackle to defendant's unloading platform. The car was on a switch track and the track was on a very steep grade, running toward the main line. On starting the car it got beyond the control of the men and ran into a train on the main line, and injured plaintiff, a switchman in the employ of the railroad company. The meat car was not equipped with a brake that could be operated, but this was not discovered until the car began to move and could not be stopped. The evidence is examined and *held* that the negligence of the defendant in not examining the car before it was started, to ascertain the condition of the brake was a question properly submitted to the jury.

4. ————: **Pleading: Instructions: Alleged Acts of Negligence not Proven.** Where a plaintiff in an action for damages caused by the negligence of another, pleads several acts of negligence, he may recover by showing any one of said acts was the cause of the injury, and it is not necessary to instruct the jury as to those acts of negligence alleged, but not proven and not relied upon for recovery.

5. ———: **Personal Injuries: Contributing to Injury.** A contributing to the injury on the part of a tortfeasor, is, in the eye of the law, the same as causing it, and if it were proven that other parties had also been guilty of acts contributing to the injury, such proof would not have excused another party whose negligent acts also contributed thereto.

6. ———: ———: ———. Where plaintiff, a switchman, was injured by a freight car from a switch track running into his train on the main line, the negligence of the packing company in charge of the freight car, who moved it with a horse and tackle without first ascertaining if it was equipped with brakes, cannot be excused by the fact, that if a derailing switch had been maintained at a proper place on the switch track by the railroad company, the accident would not have happened.

7. **CONTRIBUTION: Negligence: Joint Tortfeasors.** At the close of the evidence in an action for damages for personal injuries caused by the alleged negligence of three defendants acting jointly, the court sustained a demurrer to the evidence, filed by two of the defendants. The other defendant complained of this action on appeal on the grounds that he was deprived of his right of contribution against its co-defendants. *Held,* that plaintiff was not responsible for such action to which he did not consent, and *held further,* that as section 2870, Revised Statutes of 1899, provides for contribution in such a case only after judgment and appellant's contention was without merit.

8. **PERSONAL INJURIES: Excessive Verdict.** Plaintiff, a switchman, was injured by being caught between an engine and a freight car. At the time of the injury he was forty-six years old and was making thirty cents per hour. His leg was scarred considerably and did not heal for a month, and his knee was weak and he could not work as a switchman. There was no direct evidence that he suffered very severe pain, nor under the evidence was it certain as to the extent or permanency of his injury. *Held,* that the verdict for $5000 was excessive, and that a judgment for $3500 would be affirmed.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED (*upon remittitur*).

*W. B. & Ford W. Thompson,* for appellant, and *Ralph Crews* of counsel.

(1) A deposition may not be read in evidence unless one of the reasons assigned in the statute for

the admission of said deposition is properly established by competent evidence. Wetherall v. Patterson, 31 Mo. 459; Livermore v. Eddy, 3 Mo. 547; Grinan v. Mockler, 29 Mo. 346; Hollfield v. Block, 20 Mo. App. 331. (2) In the absence of actual knowledge of the condition of the brake defendant's servants were entitled to presume that the brake was an ordinary one and was in ordinary good order, and nothing short of actual knowledge of its defective condition would overcome that presumption. Elliott v. Railroad, 105 Mo. App. 523; Riska v. Railroad, 180 Mo. 168; Meng v. Railroad, 108 Mo. App. 553; Fox v. Packing Co., 96 Mo. App. 173. (3) The defendant beef company, is not liable, notwithstanding the jury might find that it would have been safer to have used an engine to move and control the said car. Saxton v. Railroad, 98 Mo. App. 484; Hunt v. Railroad, 126 Mo. App. 79; Bokamp v. Railroad, 123 Mo. App. 284. (4) The question always is, was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? Zeis v. Brewing Co., 205 Mo. 638; Feddeck v. Car Co., 125 Mo. App. 24; Fetter v. Fidelity & Casualty Co., 174 Mo. 256; Aldrich v. Transit Co., 101 Mo. App. 90; Wilson v. Railroad, 129 Mo. App. 658; Brown v. Railroad, 20 Mo. App. 222; Fuchs v. St. Louis, 167 Mo. 620; Atchison v. Railroad, 90 Mo. App. 489; Doss v. Railroad, 135 Mo. App. 643. (5) The verdict is grossly excessive. Chitty v. Railroad, 148 Mo. 64; Partello v. Railroad, 217 Mo. 645; Gibney v. Transit Co., 204 Mo. 704; Rodney v. Railroad, 127 Mo. 691; Ice Co. v. Tamm, 90 Mo. App. 202; Chlanda v. Railroad, 213 Mo. 244; Brady v. Railroad, 206 Mo. 509; Rittell v. Iron Co., 127 Mo. App. 463; Davidson v. Transit Co., 211 Mo. 320; Waddell v. Railway, 213 Mo. 8; Neff v. Cameron, 213 Mo. 350; Wilkerson v. Railway, 126 Mo. App. 613; Thompson v.

Poplar Bluff, 124 Mo. App. 439; Miller v. Canton, 123 Mo. App. 325; McNamara v. Railway, 133 Mo. App. 645; Lattimore v. Power Co., 128 Mo. App. 372; Saller v. Shoe Co., 130 Mo. App. 712; Tucker v. Telephone Co., 132 Mo. App. 418; Burleigh. v. Transit Co., 124 Mo. App. 724; Robinson v. Railroad, 133 Mo. App. 101; Barree v. Cape Girardeau, 132 Mo. App. 182; Garard v. Coal Co., 207 Mo. 242.

*Phil H. Sheridan, Henry B. Davis* and *A. R. Taylor* for respondent.

NIXON, P. J.—This was an action for personal injuries sustained by the plaintiff. The suit was brought originally against the appellant herein, together with the Missouri Pacific Railway Company and the Manufacturers' Railroad Association of St. Louis, but, as will be shown, the court at the conclusion of the plaintiff's evidence sustained a demurrer to the evidence so far as the two last named defendants were concerned.

The petition charges that the Manufacturers' Railroad Association of St. Louis, the Missouri Pacific Railway Company and the St. Louis Dressed Beef and Provision Company are the owners or jointly interested as lessees, licensees and operators of certain railroad tracks in the city of St. Louis, east of Broadway, commonly known as the Anheuser-Busch switches. That plaintiff on or about the 29th day of September, 1905, was in the employ of the St. Louis, Iron Mountain & Southern Railway Company in the capacity of a switchman. That defendant, the St. Louis Dressed Beef and Provision Company, has a place of business just south of one of said switches known as the Anheused-Busch switches and facing Broadway in said city, and that a railroad track owned or operated by the defendants is adjacent to the establishment of the St. Louis Dressed which is adjacent to the establishment of the St. Louis Dressed Beef and Provision Company intersects another railroad track owned and operated by the defendants.

That the St. Louis Dressed Beef and Provision Company, by its servants and agents so negligently handled a car loaded with ice at its place of business that without any negligence on the part of the plaintiff, said car was allowed to become loosened, ran down the switch track, and collided with the train upon which plaintiff was riding and crushed plaintiff between the engine, and car of said train. That the railroad track leading from appellant's establishment was owned and operated by the defendants and is on a very steep grade so that it is unsafe to move cars on said grade without the use of an engine to control them, which fact was known to the defendants, or by the exercise of ordinary care might have been so known. The first specific charge of negligence is that said railroad track was built with a grade so steep that it was unsafe to attempt to handle cars on said grade without the use of an engine, and that the car aforesaid was attempted to be moved without an engine to control it. As a second specific charge of negligence, it is alleged that a derailing switch was built so near the point of intersection that when said car became loose said derailing switch was unable to prevent a collision by reason of its closeness. As a third specific act of negligence, plaintiff alleged that the employees of defendants were attempting to move a car on said switch without the use of an engine, thereby allowing the same to escape from them and run down said track and collide with the train upon which plaintiff was riding. It is further charged in the petition that the grade was so steep that it was necessary not only to have a brake on such car on said grade, but also to keep constantly blocks under the wheels of said car to keep it from moving, and plaintiff alleges as a specific act of negligence that defendants neglected to set a brake on said car and to keep blocks under the wheels of said car so that said car became loosened and collided with the train on which

plaintiff was riding. That as a result of the collision, plaintiff was caught between the engine and another car and was injured as follows: His left leg was bruised and lacerated, the muscles of his right leg and kneecap were sprained and dislocated so that atrophy of the right kneecap occurred from the effects of said injuries, so that he was confined to his bed about three weeks and suffered great pain and anguish and will continue to suffer pain and anguish in the future, and that he will be put to a great expense in the future for medicine and doctor's bills and he will suffer great loss in being unable to earn as much wages as he had earned heretofore, and that said injuries to his right leg are permanent. Judgment was asked for twenty-five thousand dollars and costs.

The separate answer of the St. Louis Dressed Beef and Provision Company was a general denial and a plea of contributory negligence. The reply was a general denial.

The evidence at the trial showed that plaintiff was forty-six years of age and had been a switchman fifteen or twenty years. That on the morning of the accident, he was standing upon the footboard on the front end of an engine which was proceeding in a westwardly direction on an upgrade, pushing in front of it a freight car loaded with meat along the main track of the Iron Mountain railroad, and had reached a point some six feet east of the switch which, with other switches, connected with the appellant's switch track, when a car filled with ice came in violent contact with the west end of the car which was being pushed by the engine on which plaintiff was riding, and he received the injuries complained of. That the appellant's switch leads in a westwardly direction from the point where the accident occurred to its siding and storehouse on the east side of Broadway, and that this switch track runs on a very steep grade to defendant's warehouse on the east side of Broadway. That the defendant maintained a warehouse on the east side of Broadway in the city of St. Louis and had switch

tracks along the east side of its building. The switch track in question connected with its warehouse and ran in an easterly direction over a network of switch tracks or spur tracks and connected with the main track of the Iron Mountain railroad. This switch track was used in connection with defendant's business, and cars were pushed back and forth from defendant's warehouse to different points. These switch tracks at the Broadway end were some seven feet over the part where they connected with the main line of the Iron Mountain railroad. The evidence tended to show that the only proper way of handling a loaded car from appellant's siding to the main track where the accident occurred was by use of an engine to control it and that it could not safely be handled in any other way. That there was a derailing switch located about six feet from the main track, but that this derailing switch was not properly located and was not far enough away from the main track to be operated in safety; that in order to be operated safely, it should have been thirty or forty feet from the main track because of the steepness of the grade of the track leading up to appellant's platform or siding. That there was danger if a car should get loose at the west end of the switch track near appellant's establishment because it would run down the switch track and collide with any engine or train that might be on the main track. That on the morning of the accident, there were three cars standing on the west end of the switch track close to appellant's building. The two cars to the east were ice cars and the one to the west was a beef car. That appellant's employees waited several hours for an engine so that they could switch the beef car down to a place occupied by the ice cars in order to unload it, but because of delay in getting the engine, they concluded to move the beef car down one car's length by means of a horse and tackle. For this purpose they attached a rope to tie in the middle of the track to the east of the car and the other end of the rope to the car. One

Smith was in charge of moving the car. He directed a man named Totsch to go on top of the car and handle the brake. Another employee stood beside the track with blocks in his hands to block the wheels of the car after it was in motion. A man named Manley had charge of the horse which was hitched to the tackle. Smith testified that he did not examine the couplings of the cars, but that they were together and he naturally thought that were coupled. That Totsch was on top of the car some five or ten minutes and was standing beside the brake when it started; that Totsch then applied the brake but it did not seem to stop the car; that Totsch gave it another wrench, but that it spun round and round and did not catch and the car ran some five or six car lengths. That the brake was a wheel brake and would not work, and after the car had run that distance, Totsch jumped off; that after the car started Smith tried to block the wheels but was unable to check the movement of the car; that immediately before the car started, Manley asked Smith if everything was all right, and Smith said it was. After Manley had received this information he started the horse. The evidence further goes to show that cars were sometimes moved on the siding with a pinchbar, but that when moved with a horse and tackle, a man was usually placed on top of the car to work the brake; that when the car reached the desired place, the man on top would apply the brake and another man on the ground would block the wheels. Smith, at the time the car started on this particular occasion, called to Totsch to put on the brake and threw a block under the wheel to stop the car, but the car ran over it; he kept throwing blocks under the wheels until the car was beyond control, and it was moving at the rate of twenty or twenty-five miles an hour when it went onto the main track. The evidence for the defendant tended to show that if the brake had been in good condition, Totsch could probably have controlled the car. An hour after the accident the brake staff was examined

and was found to have no chain on it, and there was found a distinct marking in chalk on the side, plainly visible, "No brakes." It further appeared that it was customary to mark cars without brakes in this way.

Plaintiff obtained judgment for five thousand dollars from which the defendant, St. Louis Dressed Beef and Provision Company, has appealed.

I. It is first assigned as error that the deposition of Dr. Joseph B. Hardy was improperly admitted in evidence. This deposition was taken on the 3d day of October, 1906, in the city of St. Louis. The deposition itself stated that the witness was about to leave the city with the intention of changing his domicile; that he expected to leave the following afternoon and that he would not be in St. Louis on October 8, 1906.

At the time of offering the deposition in evidence, one of plaintiff's attorneys as a witness stated that he knew Dr. Hardy very well and had known him for eight or ten years. "Q. Do you know where Dr. Joseph B. Hardy's present residence is? A. Staunton, Neb. Q. Do you know when he went there to reside? A. I think the 5th of October last. Q. Have you heard from him since he left the city of St. Louis? A. I have, from Staunton, Neb." Cross-examination: "Q. Upon what do you base your opinion that he resides in Nebraska? A. From his declarations. Q. Do you know where in Staunton, Neb., he lived? A. In a hospital; he has charge of it. Q. Do you know that he has charge of it? A. I never saw him in possession, but that is his place of residence; that is where he declares it to be."

Under our present statute concerning depositions, section 2904, Revised Statutes 1899, it is provided that facts authorizing the reading of the deposition may be established by the deposing witness. In this case the deposition was taken on October 3, 1906, and the trial occurred November 12, 1906. Under the law it has been held that the statement of the deposing witness in his

deposition that he was about to change his domicile is not sufficient of itself to admit the deposition in evidence; but very slight evidence that he actually did leave and had not returned would have been a sufficient compliance with the statute to take the witness' declaration of his intention to go as proof that he did go. [Gaul v. Wenger, 19 Mo. 541.] We think the evidence furnished by plaintiff's attorney was sufficient to authorize the court to allow the introduction of the deposition as evidence in the case.

II. It is assigned as error that the court refused to give appellant's instruction numbered six. But while the court refused to give this instruction, it gave an instruction covering substantially the same question. Appellant's instruction asked the court to direct the jury that the agents and employees of the appellant company at the time of moving the car which caused the injury had a right to presume that such car was properly equipped with a brake, unless the jury should believe that the appellant actually knew to the contrary, and that by "brake" is meant such a brake as is usually and customarily supplied as a part of the equipment of an ordinary freight car of the kind and character which was disclosed by the evidence. The instruction given by the court was to the effect that the appellant had the right to presume that the car which caused the injury was properly equipped with a brake, unless the jury should believe that the appellant actually knew to the contrary, or by the exercise of ordinary care on its part would have known to the contrary, and that by "brake" is meant such a brake as is usually and customarily supplied as a part of the equipment of an ordinary freight car of the kind and character disclosed by the evidence.

It is to be noted in this case that there was no relation of master and servant existing between the plaintiff and the appellant, and hence no duty could be invoked on the part of the master to furnish the servant

reasonable safe machinery and appliances with which
to do the master's work.  Therefore, under the circum-
stances, there was no presumption that the car was
properly equipped with a brake.  The liability of the ap-
pellant for the proper equipment of the car with a brake
was a question of negligence to be determined by the
jury from all the facts in evidence, which act of negli-
gence the plaintiff in his petition alleged and which he
was required to prove by a preponderance of the evi-
dence.  The question was correctly presented to the jury
in the following instruction, given at appellant's request:
"No. 2. The jury are instructed that unless they find and
believe from the evidence that a reasonably prudent and
cautious man under the circumstances detailed in evi-
dence, as you believe them to have existed at the time,
would not have attempted to move the car in question
without the use of an engine to control it, plaintiff is not
entitled to recover."  The question of the negligence of
the appellant was fairly and favorably presented by the
instruction of the court and the evidence was sufficient
to justify the submission of the question of negligence
to the jury.

After the appellant's servant had gone onto the car
to take charge of the brake, the brake was not set, the
couplings of the car were not examined, and those in
charge knew that the accident was inevitable from the
steepness of the grade unless the brake was in good con-
dition so that the car could be stopped on the grade.
An opportunity was had by the man on top of the car
for five minutes before it started to have made an exam-
ination of it.  He had been purposely sent on top of the
car to take charge of the brake, and when asked before
the car started whether everything was all right an-
swered that it was.  When Smith, the man in charge of
the moving of the car, was asked whether everything was
all right, he answered that it was.  The evidence is un-
contradicted that the brake was not in working order
so as to check the movement of the car; that when the

man in charge of it tried to use it, it spun round and round and the brake staff had no chain on it. In this condition of the evidence, the question was fairly for the consideration of the jury as to the negligence of the appellant in not examining to ascertain the condition of the brake before starting the car.

III.   It is claimed that plaintiff could not recover in this case because of an entire failure of proof; that the accident resulted from the absence of a properly located derailing switch.

At the trial of the case, the liability of the appellant was not made to depend upon the construction or maintenance of a derailing switch, and no instruction was given by the court authorizing a recovery by plaintiff on that theory.   The plaintiff, it is true, charged three specific acts of negligence, one of which was that of the derailing switch was built so near the point of intersection of the switch track and the main track that by reason of such proximity the derailing switch was unable to prevent the collision.   At the trial, the plaintiff abandoned this charge of negligence in his petition. Where a plaintiff in an action for damages caused by the negligence of another pleads several acts of negligence, he may recover by proof of one as to the cause of the injury, and it is not necessary to instruct the jury as to those acts of negligence alleged but not proven. [Feddeck v. St. Louis Car Co., 125 Mo. App. 24, 102 S. W. 675; Wallack v. St. Louis T. Co., 123 Mo. App. 160, 100 S. W. 496; Spaulding v. Metropolitan St. Ry. Co., 129 Mo. App. 607, 107 S. W. 1049.]

A correct summary of the evidence in this case as to the derailing switch is given by appellant in its brief as follows:   "There is no evidence offered tending to show whose duty it was to provide the derailing switch, and no evidence whatever to show that a properly located derailing switch would have prevented the injury, and more especially, unless it was open.   .   .   .   And

there is consequently an entire failure of proof that the accident resulted from the absence of a properly located derailing switch."

Appellant insists that the court erred in refusing to charge the jury that if a derailing switch had been erected and maintained at a proper point between appellant's siding and the main track where the plaintiff was injured, then the appellant would not have been liable. The ground of this contention is that the failure to erect and maintain a properly located derailing switch was such a new and independent cause intervening between the wrong and the injury that there was no unbroken connection between the wrongful act and the injury. We are not prepared to give our assent to this view. Nor can we say that a failure to act—a mere negation—can become a cause so as to bring into operation the legal maxim, *Causa proxima non remota specatur*. But if the proof had tended to support this contention, and it had been established that other parties should have maintained a derailing switch, and that such a switch, properly maintained, would have prevented the accident, and that by reason of such act they were guilty of negligence contributing to plaintiff's injury, such state of facts would have constituted no justification for the appellant in this case. A contributing to the injury on the part of the tortfeasor is, in the eye of the law, the same as causing it, and if it were proven that other parties had also been guilty of acts contributing to this injury, such proof would not have excused the appellant if it was also guilty of negligence. [Bragg v. Metropolitan St. Ry. Co., 192 Mo. 331, 91 S. W. 527.]

IV. This action was commenced against the appellant, together with the Missouri Pacific Railway Company and the Manufacturers' Railroad Association of St. Louis. At the conclusion of plaintiff's evidence, the two last named defendants filed a demurrer to the evidence which was by the court sustained and to which

action appellant objected. Appellant contends that this action of the court deprived it of its right to contribution against the other joint tortfeasors.

Our statute, section 545, Revised Statutes 1899, provides: "Every person who shall have a cause of action against several persons, . . . may bring suit thereon jointly against all or as many of the persons liable as he may think proper, . . . " If the proof in the case justified the action of the court in sustaining the demurrer, the plaintiff cannot be held responsible for such action, to which he was not consenting. Section 2870, Revised Statutes 1899, providing for contribution, declares that defendants in a judgment founded on an action for redress of a private wrong shall be subject to contribution and all other consequences of such judgment in the same manner and to the same extent as the defendants in a judgment in an action founded on contract. This provision of the law affords no support to the contention of the appellant herein. It only provides for the right of contribution after judgment, as between the defendants therein, and has no application to any proceedings prior thereto.

V. It is lastly assigned that the verdict of five thousand dollars is excessive. The testimony of the plaintiff was to the effect that he was forty-six years of age; that his leg was scarred up considerably, and the wounds on it did not heal for about a month. That the muscles on his right leg are to some extent shriveling and that there were also some cuts and bruises on the same leg; that his knee has been weak since the injury; that he had been unable to act as switchman since the injury; that he cannot hit the footboard with his foot as switchmen are required to do when the train is in motion. That his wages at the time of the injury was thirty cents an hour.

Plaintiff's physician testified that he saw plaintiff four or five days after the accident and found that there

was a swelling over plaintiff's right knee. "His kneecap was somewhat dislocated and that was the principal injury. It is still looser than the other kneecap, which shows that the ligaments must have been ruptured by the force of the accident. The other part of the leg shows atrophy. Judging from plaintiff's age, this condition will be permanent so that he will never have good use of his right limb." There was no direct evidence that plaintiff suffered any very severe physical pain or great mental anguish by reason of the accident.

Several physicians testified for the defendant. Among them was Dr. A. V. L. Brokaw, who testified that he had made several careful and exhaustive examinations of the plaintiff; that there remained very little objective sign of the injury, although at first there was an injury to the muscles above the kneecap, and the limbs still show the deepset scar on the muscles as the result of the tear and the repair; that there is a slight difference of perhaps half an inch in the size of the two limbs. Between the time he examined plaintiff before the trial and the date of the trial there had been no change in sensation, no change in circulation, and there was no paralysis in the limb, and its movements were good. There were no signs at all of any active inflammation. "Positively, there is no evidence of any synovitis or inflammation of the joint. If there is any impairment in the function of that leg it would seem to be slight, and I say the symptoms are subjective and not objective, and the sooner he goes to work the better it will be for him."

Under the evidence of eminent surgeons, the voice of science is uncertain as to either the extent or permanency of the plaintiff's injuries and leaves in great doubt the question whether they are of such a nature as to permanently impair the use of the plaintiff's limb. Under these circumstances, our conclusion is that the judgment is excessive. It is therefore ordered that the judgment be affirmed on condition that the respondent file with the clerk of this court within thirty days from

the date of the filing of this opinion a written remittitur of fifteen hundred dollars of the judgment, leaving a judgment of thirty-five hundred dollars; otherwise, the judgment will be reversed and the cause remanded for a new trial. All concur.