**MISSOURI PACIFIC RAILROAD COMPANY, a corporation, Third-Party Plaintiff-Appellant,**

v.

**WHITEHEAD & KALES COMPANY, Third-Party Defendant-Respondent.**

**No. 59906.**

Supreme Court of Missouri,
En Banc.

April 28, 1978.

Rehearing Denied June 15, 1978.

Arthur C. Popham, Jr., Kansas City, for third-party defendant-respondent.

SEILER, Judge.

In *Sampson v. Missouri Pacific Railroad Co.*, 560 S.W.2d 573 (Mo. banc 1978), we affirmed a $300,000 judgment against Missouri Pacific for damages for injuries received by Robert Sampson, an employee of its consignee. Sampson was injured when he fell to the ground from the top of a three decker auto rack rail car.

The instant case arises from the attempt of Missouri Pacific, pursuant to rule 52.11 and § 507.080, RSMo 1969, to bring Whitehead & Kales Company, Inc., the manufacturer and installer of the auto rack, into the *Sampson* case as a third party defendant liable to Missouri Pacific for all or a part of the plaintiff's claim against Missouri Pacific.

Missouri Pacific alleged that Whitehead & Kales was the designer, manufacturer, seller and installer of the auto rack and knew that workmen would be working on the third deck in loading automobiles; that Whitehead & Kales warranted the auto rack was merchantable and fit for the purposes of loading and transporting automobiles by rail and was not defective in design or inherently dangerous for the uses intended; that Whitehead & Kales negligently designed and manufactured the auto rack by reason of the omission of a portion of a foot rail on the third deck and failed to warn Missouri Pacific or Sampson of this dangerous condition; that Missouri Pacific had notified Whitehead & Kales of the pendency, and tendered the defense, of the *Sampson* lawsuit, and that if Sampson recovered from Missouri Pacific it would be by virtue of Whitehead & Kales' original, active, and primary negligence in the above respects.[1]

The trial court dismissed Missouri Pacific's third party petition and denied leave to file an amended petition, taking the posi-

---

Harlan D. Burkhead, Kansas City, for third-party plaintiff-appellant.

1. Missouri Pacific's petition is susceptible of being read to include negligence, warranty, and strict liability as possible theories of recovery. Missouri Pacific is, of course, at the pleading stage, free to plead *as many theories of recovery as it may consider* warranted. Rule 55.10.

tion the parties were both "in *pari delicto*, where no legal right of contribution exists among those who are not joint judgment tortfeasors, and where no ground or legal basis for indemnity is stated."

The court of appeals, Kansas City district, affirmed the trial court's judgment, finding that Missouri Pacific's alleged failure to warn Sampson constituted active negligence and that it was in *pari delicto* with Whitehead & Kales, preventing any indemnification, citing *Crouch v. Tourtelot*, 350 S.W.2d 799, 807 (Mo. banc 1961), and *Cupp v. Montgomery*, 408 S.W.2d 353 (Mo.App. 1966). We granted transfer for the purpose of reexamination and clarification of the law on non-contractual indemnity and the law of contribution.[2] We reverse and remand.

## I.

A few preliminary observations are necessary.

It should be borne in mind that the right to non-contractual indemnity presupposes actionable negligence of both parties toward a third party. *Donald v. Home Service Oil Co.*, 513 S.W.2d 426 (Mo.banc 1974); *State ex rel. Merino v. Rose*, 362 Mo. 181, 240 S.W.2d 705 (banc 1951); *Best v. Yerkes*, 247 Iowa 800, 77 N.W.2d 23 (1956); 1 J. Dooley, Modern Tort Law § 26.07, at 547 (1977).

While Missouri Pacific is asking, on the face of its third-party petition, for full reimbursement or indemnity from Whitehead & Kales, in actuality it is doing so on the basis that while both are to blame, its fault is relatively less than that of Whitehead &

Kales. If Missouri Pacific had not been found guilty of some fault on the Sampson claim, this case would not be before us. *Donald v. Home Service Oil Co.*, 513 S.W.2d at 428.

The third party rule under which Missouri Pacific is proceeding which stems from the statute passed in 1943 as explained below, expressly provides for bringing in a party who is or may be liable to the defendant *"for all or part"* of the claim being made against the defendant (emphasis supplied). This language does not limit the defendant to an "all or nothing" claim or recovery against the person he seeks to bring in.

Rule 52.11 was first adopted by the court July 1, 1959, to be effective April 1, 1960. Prior to that, however, in 1943, the legislature had enacted an entire new civil code, Laws 1943 at 353–97. Included therein was Missouri's first third-party practice statute, § 20, later § 507.080, RSMo 1959, wherein a defendant was permitted to bring into the lawsuit a person not a party to the action who was liable to him or to the plaintiff for all or part of the plaintiff's claim against him. Thus it can be said that the legislature, as a matter of policy, decided that a third party could be brought into the case where liable to the original defendant either *in whole or in part* for the plaintiff's claim against him.[3] This comports exactly with what Missouri Pacific is seeking to do in the present case.

## II.

The long history of the law of joint and concurrent tortfeasor liability in our jurisprudence is in fact a rich expositional re-

---

2. By "non-contractual" indemnity we have reference to indemnity between joint tortfeasors culpably negligent, having no legal relation to each other. We do not include indemnity which comes about by reason of contracts, or by reason of vicarious liability.

3. In *State ex rel. McClure v. Dinwiddie*, 358 Mo. 15, 213 S.W.2d 127 (banc 1948), a petition for a writ of mandamus growing out of a damage suit involving a guest passenger injured in

a two-car collision, this court held that it was optional with the plaintiff whether or not to accept a third party defendant brought in by a third party plaintiff, but the court refused to hold that the statute would not apply to tort actions. The court held that the right to move for impleader was "unequivocally given" by the statute, although the statute did not change the substantive law respecting contribution as fixed by § 3658, RSMo 1939, now § 537.060, RSMo 1969. 213 S.W.2d at 131.

finement of the principle of fairness.[4] Early in Anglo-American law the "rule" developed that there shall be no contribution or indemnity between joint tortfeasors, 1 T. Street, The Foundation of Legal Liability 490 (1906), as "a necessary consequence of the principle embodied in the maxim *ex turpi causa non oritur actio* [out of an immoral or illegal consideration an action does not arise]." *Id.* The "rule" has mistakenly been attributed to *Merryweather v. Nixan*, 8 D. & E. 186, 101 Eng.Rep. 1337 (K.B. 1799), a case in which contribution was denied as between two *intentional* joint tortfeasors, the court disclaiming any effect its decision may have on "cases of indemnity", *id.*, by which is implied "a primary or basic liability in one person, though a second person is also for some reason liable with the first or even without the first, to a third person". Leflar, Contribution and Indemnity Between Tortfeasors, 51 U.Pa.L.Rev. 130, 146 (1932). Rather, the "rule" in *Merryweather v. Nixan, supra,* is the exception, the true common law rule having been determined in Battersey's Case, Winch's Rep. 48 (Common Pleas 1623) that "among persons jointly liable the law implies an assumpsit either for indemnity [described above] or contribution [shared liability] and the exception is that no assumpsit, either express or implied, will be enforced among wilfull tortfeasors or wrongdoers." Note, Contribution Between Persons Jointly Charged for Negligence—*Merryweather v. Nixan,* 12 Harv.L.Rev. 176, 177 (1898).

What is unmistakable about the common law of joint or concurrent tortfeasor liability, in whatever configuration it may be understood, is its attention to the relative weight of fault. Negligent commission of a tort was "bad" but not as "bad" as the intentional commission of a tort, *Battersey's Case, supra,* to which the response of courts was to refuse to "adjust among intentional wrongdoers the damage flowing

from the wrong . . . [which] would aid intentional wrongdoers in avoiding the consequences of their acts." *Leflar, supra* at 179. For those whose joint torts were not wilful, malicious, intentional, unlawful, or immoral, contribution would be allowed even though they were in *pari delicto.* Note, *supra,* 12 Harv.L.Rev. at 182. These rules and maxims were developed and sustained by application of fairness and the "ethical principles involved." *Id.* at 194. Actually, "it seems not to make much difference what formal explanation is accepted, so long as it is understood that the right to contribution is not necessarily based on a voluntary consensual transaction between the parties. The essential thing is the attempt to be fair as between persons subjected to a common legal liability." *Leflar, supra* at 137; *See* R. Pound, The Spirit of the Common Law 20–31 (1921). Nonetheless, in Missouri the courts did not restrict denial of contribution or indemnity to intentional tortfeasors. The general rule has been there is no right to indemnity or contribution between concurrent or joint tortfeasors in *pari delicto,* except as provided by statute. *E. g., Union Electric Company v. Magary,* 373 S.W.2d 16, 22 (Mo.1963); *Crouch v. Tourtelot,* 350 S.W.2d 799, 803 (Mo. banc 1961); *Berkson v. Kansas City Cable Ry. Co.,* 144 Mo. 211, 217, 45 S.W. 1119, 1120 (1898).

### III.

Despite the early common law "rule", we do permit indemnity to some extent between non-contractual concurrent tortfeasors in Missouri. Indemnity is theoretically tied to the principle of fairness. It was once described by Learned Hand as "an extra form of contribution." *Slattery v. Marra Brothers, Inc.,* 186 F.2d 134, 138 (2d Cir. 1951). It unquestionably has a strong flavor of unjust enrichment flowing from the realization that while two tortfeasors

---

4. By the "principle of fairness" here we mean the promise which is derivative of economic and political freedom and personal physical mobility. That is, in exchange for the opportunity of some undertaking, we each promise all others that we will be liable for the damage which our own negligence in the undertaking has caused. This creates a shared fiduciary obligation for which the principle of fairness is a premise. J. Rawls, A Theory of Justice 348 (1971). This premise is the basis of our fault-based system of tort liability.

may be jointly liable each in full to an injured plaintiff, as between them there may be a considerable difference in blame.

The elucidation of the distinction between concurrent tortfeasors as to their relative fault has spawned a series of court-coined terms which is "bewildering, to say the least." Davis, Indemnity Between Negligent Tortfeasors: A Proposed Rationale, 37 Iowa L.Rev. 517, 536 (1952). We ourselves have criticized them as unworkable and unsatisfactory. *Donald v. Home Service Oil Co.*, 513 S.W.2d 426, 430 (Mo. banc 1974); *Crouch v. Tourtelot*, 350 S.W.2d 799, 807 (Mo. banc 1961); *McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co.*, 323 S.W.2d 788, 793 (Mo.1959). In reality, these are all methods of weighing the degree of negligence, 47 N.Y.U.L.Rev. 815, 821 (1972), used as the basis or test determining whether a moving party may be indemnified. Among them have been the distinction between "active and passive" negligence, *e. g., Kansas City Southern Ry. Co. v. Payway Feed Mills, Inc.*, 338 S.W.2d 1, 7 (Mo.1960); "primary and secondary" duty, *e. g., Hales v. Green Colonial, Inc.*, 402 F.Supp. 738, 740 (W.D.Mo.1975) (applying Missouri law), *modified on other grounds Hales v. Monroe*, 544 F.2d 331 (8th Cir. 1976); a combination of "primary and active" and "secondary and passive" roles in the "negligent situation", *e. g., Johnson v. California Spray-Chemical Co.*, 362 S.W.2d 630, 633 (Mo.1962); or the "imputation of law" of the relationship between the indemnitor and the indemnitee, *e. g., Campbell v. Preston*, 379 S.W.2d 557, 559 (Mo.1964). *See generally* Davis, *supra* at 543–44; Comment, Products Liability—Non-Contractual Indemnity—The Effect of the Active-Passive Negligence Theory in Missouri, 41 Mo. L.Rev. 382 (1976); Comment, Procedure—Third Party Practice—Non-Contractual Indemnification, 28 Mo.L.Rev. 307 (1963); Note, The Allocation of Loss Among Joint Tortfeasors, 41 So.Cal.L.Rev. 728 (1968); 30 Mo.L.Rev. 624 (1965).

Following *Kansas City Southern Ry. Co.*, the "active-passive" test has come into general use in Missouri: *e. g., Union Electric Co. v. Magary*, 373 S.W.2d 16, 21 (Mo.1963);

*Johnson v. California Spray-Chemical Co.*, 362 S.W.2d 630, 634 (Mo.1962); *Crouch v. Tourtelot*, 350 S.W.2d 799, 809 (Mo. banc 1961); *Bratten v. Sharp Enterprises, Inc.*, 552 S.W.2d 306, 310 (Mo.App.1977); *Fields v. Berry*, 549 S.W.2d 122, 127–28 (Mo.App. 1977); *Hays-Fendler Construction Co. v. Traroloc Investment Co.*, 521 S.W.2d 171, 176–77 (Mo.App.1975); *Lewis v. Amchem Products, Inc.*, 510 S.W.2d 46, 48 (Mo.App. 1974); *State ex rel. Laclede Gas Co. v. Godfrey*, 468 S.W.2d 693, 698 (Mo.App. 1971); *Western Casualty & Surety Co. v. Shell Oil Co.*, 413 S.W.2d 550, 556 (Mo.App. 1967); *Listerman v. Day & Night Plumbing & Heating Service, Inc.*, 384 S.W.2d 111, 118 (Mo.App.1964). We have worked ourselves into a situation where indemnity as between tortfeasors is decided on the basis of which one is guilty of "active" and which one guilty of "passive" negligence. "Passive" wins, "active" loses, no matter how great the proportion of fault may have been of the passive tortfeasor.

But how is this all important distinction determined? An attempt to define "active" and "passive" negligence as between two tortfeasors where the plaintiff, as in the present case, had earlier obtained a judgment against one of them, was made in *Kansas City Southern Ry. Co. v. Payway Feed Mills, Inc., supra.* The instruction, which was prior to MAI–Civil, was as follows:

"The jury is instructed that the terms passive or secondary negligence mean a failure or fault that is imputed because a duty is imposed based on some legal relation between the parties or because the duty involved arises from some positive rule of statutory law or because the duty imposed is neglected by reason of a failure to discover or correct a defect or to remedy a dangerous condition caused by the act of another who is primarily liable. The jury is further instructed that the terms active and primary negligence mean the act of creating a dangerous condition which under all the other facts

and circumstances present is likely to cause injury to others." [5]

While this "definition" instruction passed muster in pre-MAI Civil days, by current requirements it is unwieldy, complex, and replete with terms which themselves require definition before it is understandable by a jury. In addition, while it is supposed to be a definition which will enable the jury to determine which tortfeasor is primarily liable, it assumes that fact is already known because part of the definition is couched in terms of failing to discover or remedy a dangerous condition caused by the act of another "who is primarily liable." It also assumes to be a legal "one size fits all" device. In the case before us it cannot be denied for example, that a portion of the foot rail was missing and that no one warned the injured employee, Robert Sampson. If we assume for purposes of discussion that the auto rack was dangerous as designed or manufactured by Whitehead & Kales for the use which was certain to be made of it, and if we further assume that Missouri Pacific was negligent in furnishing the auto rack as a place to work, then it can be said with equal force that both created a dangerous condition and hence that each is primarily liable as between themselves, which is a self-contradiction.

This is not a sensible way to fix responsibility in indemnity. It comes about by attempting to find a formula by which to excuse one of two joint or concurrent tortfeasors completely when as a practical matter they both are to blame, the true difference between them being only a matter of degree or relativity of fault. With a little ingenuity in phrasing, negligence can be made to be either "active" or "passive" as suits the writer. For example, "driving an automobile with bad brakes" or "running through the stop sign" or "using a defective crane" might be said to be "active" negligence, while "omitting maintenance of brake fluid level" or "neglecting to apply the brakes" or "failing to inspect the crane in order to discover its defectiveness" might be "passive" negligence—these are the same acts or omissions, but the outcome depends not upon the facts, but upon how someone chooses to characterize them.

In *Crouch v. Tourtelot*, 350 S.W.2d 799 (Mo. banc 1961), one driver, Crouch, left his automobile on the wrong side of the highway, at night, with one headlight out, near a curve, in heavy traffic, despite the fact he could readily have moved it off the highway to a position of safety. The other driver, Brown, came around the curve at an excessive speed, failed to see the stopped car and ran into it, injuring Crouch's passenger, who filed suit against Brown. Yet Crouch, despite his unquestioned contribution to the accident, could not be brought into the case by Brown, because the latter's negligence was declared to be "active".

In *Fields v. Berry*, 549 S.W.2d 122 (Mo. 1977), a guest passenger sued the host driver on a res ipsa submission where the automobile ran off the road and struck a tree. The driver impleaded the automobile dealer and the manufacturer, based on an alleged defective power steering pump which caused her to lose control of the automobile. The various claims were tried at the same time before a jury, resulting in a $10,500 recovery for plaintiff and her husband against the driver, and a recovery for the same amount in favor of the driver against the automobile dealer on the third party claim. The driver's instruction against the third party defendant predicated recovery upon a finding that she was negligent in reacting, immediately prior to the accident, to a difficulty in steering resulting from the defective pump. The court held this constituted "active" negligence on her part, barring any indemnity against the automobile dealer.

Our precedents give scant guidance for the avoidance of such illogical results as these.

5. We have found no case since the advent of MAI–Civil (January 1, 1965) wherein is set forth an instruction attempting definition of "active" and "passive" negligence in an indemnity case. This is not surprising, as MAI–Civil instructions are required to be simple and brief. Rule 70.02(e).

It has been said that indemnification is dependent on the "character" of the negligence rather than the difference in the degrees of negligence of the two tortfeasors, *State ex rel. Laclede Gas Co. v. Godfrey,* 468 S.W.2d 693, 698 (Mo.App. 1971). The problem is that we have reached the point where that "characterization" is an end in itself.

Negligence is negligence. There is no such thing as "good" negligence and "bad" negligence, or some kind of negligence which should be overlooked and another kind which should not. Nevertheless, our "active-passive" approach has produced awards of full indemnity in numerous Missouri cases, *e. g., Kansas City Southern Ry. Co. v. Payway Feed Mills, Inc.,* 338 S.W.2d 1 (Mo.1960); *McDonnell Aircraft Corp. v. Hartmann-Hanks-Walsh Painting Co.,* 323 S.W.2d 788 (Mo.1959); *Barb v. Farmers Insurance Exchange,* 281 S.W.2d 297 (Mo. 1955); *Western Casualty & Surety Co. v. Shell Oil Co.,* 413 S.W.2d 550 (Mo.App.1967); *Listerman v. Day & Night Plumbing & Heating Service, Inc.,* 384 S.W.2d 111 (Mo. App.1964). In every instance, the indemnitee, although a tortfeasor and liable to the original plaintiff, was declared to be only "passively" negligent and allowed *full* recovery. Yet the fact is that the conduct of the indemnitee in these cases was also careless and blameworthy. It usually involved failure on the part of the indemnitee to perform his duty of inspecting or warning or making certain that the work of another had been done correctly. Granted that failures and oversights of this sort would not have caused harm to the plaintiff if the other party—the indemnitor—had not also been negligent; but this should not mean that the indemnitee walks away scot-free.

Using the analogy of an old time-worn building, we have added and re-constructed so much of our law of joint and concurrent tortfeasor liability, the origins of which are ancient, that it has lost its architectural integrity and its structural balance. Only

the foundation—the principle of fairness— remains undisturbed and sturdy. We have therefore determined that, steadfastly consistent with the dictates of our common law tradition and the principles of equity embedded therein, we are obligated to reconstruct upon the principle of fairness a law of joint and concurrent tortfeasor liability which is secure, predictable, and effective.

██ A principled right to indemnity should rest on relative responsibility and should be determined by the facts as applied to that issue. In a case such as we have before us, the jury should be instructed that if they find the third party defendant did certain acts or omissions and was thereby negligent and that the same directly contributed to cause the injuries and damage to the original plaintiff, then the jury should award the third party plaintiff such proportion of the total sum paid by it to plaintiff as corresponds to the degree of fault of the third party defendant.[6] The two concurrent tortfeasors should be treated according to their respective fault or responsibility.

This would present no insurmountable problem to the jury. We already differentiate verdicts among joint tortfeasors where punitive damages are involved. The jury is instructed that they may find punitive damages against several defendants in different amounts, depending upon differing degrees of culpability, *State ex rel. Hall v. Cook,* 400 S.W.2d 39, 42 (Mo. banc 1966); MAI 10.03; MAI 36.12. A system of apportionment of damages has long been in use in Missouri in Federal Employer's Liability Act cases, where the assessment of the extent of plaintiff's relative fault (contributory negligence) is handled by a simple instruction that if the plaintiff is found to be contributorily negligent, then the jury "must diminish the sum in proportion to the amount of negligence attributable to [plaintiff] [decedent]." MAI 32.07, Notes on Use (2d ed. 1969).

6. The court is requesting its committee on MAI–Civil instructions to submit proposed instructions for use in non-contractual indemnity cases applying the principles set forth in this case. Members of the bar and appropriate bar committees are invited to communicate their views on the subject to the committee.

Rule 71.01 defines a general verdict as "one by which the jury pronounces generally upon *all or any* of the issues," so the jury's verdict could assess damages, in accordance with the instructions, and award indemnity in an amount proportionate to the relative fault of the parties.

■ This could be done by ordinary third party practice such as Missouri Pacific is attempting here, or it could be done by cross-claims between codefendants.

This method of handling non-contractual indemnity will provide a clear and definite set of guidelines. It avoids deciding cases on the basis of whether conduct or nonconduct can be characterized as active or passive. And it removes the inequity of a plaintiff being able to saddle the entire burden on one defendant while letting another equally or more culpable party go free, for whatever reason plaintiff may have.

### IV.

Our contribution statute, § 537.060, RSMo 1969, originally passed December 12, 1855, Ch. 51, § 8, RSMo 1855, relaxed the common law ban on contribution in tort actions, discussed *supra.* It represented a change in public policy "to avoid the injustices flowing from adherence to the rule of no contribution." Note, The Joint Tortfeasor in Missouri, 25 Wash.U.L.Q. 572, 573 (1940). It provides that "[d]efendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. . . ." It is to be noted that § 537.060 is silent as to contribution between defendants other than judgment defendants. It "has no application to any proceedings prior" to judgment. *Moudy v. St. Louis Dressed Beef & Provision Co.,* 149 Mo.App. 413, 426, 130 S.W. 476, 481 (1910).

We live in an economic and commercial environment vastly apart from the quiescent era of the 1850s during which our contribution statute was originally enacted.

Now, for example, complex procedural tangles flow from the necessary development of a law of products liability. We no longer value the antique moralism that if we permit concurrent tortfeasors to share their burden we will thereby be encouraging them in the very joint negligence for which we hold them liable. To limit any apportionment of damages between tortfeasors to those whom the plaintiff has chosen to sue and against whom judgment is rendered is an inartful and capricious policy, relying in excess upon the whim and wrath of a plaintiff before concurrent wrongdoers can share liability.

Even now where there is a joint tort judgment, contribution does not automatically follow. The proportion to be paid remains to be determined. In *Hays-Fendler Construction Co. v. Traroloc Investment Co.,* 521 S.W.2d 171, 175–76 (Mo.App. 1975) the court considered a claim for contribution between two judgment tortfeasors, which judgment had been paid in full by one defendant's insurer. Nevertheless, no contribution was allowed. The court pointed out that while a joint judgment established "joint liability" to the plaintiff, "[i]t does not determine as between the defendants which should pay the entire liability, or what proportion each should pay in case each is partly liable. That issue is not adjudicated."

In *Hays-Fendler* the court concluded that despite the joint obligation to the plaintiff, the entire burden should be borne by one of the defendants (Hays-Fendler); that the other defendant's liability was derivative and passive while Hays-Fendler's was primary.

Similarly, in *Kinloch Telephone Co. v. City of St. Louis,* 268 Mo. 485, 496–97, 188 S.W. 182, 184 (1916), *citing McMahan v. Geiger,* 73 Mo. 145, 149, 39 Am.Rep. 489, 490–91 (1880), primary liability was held to be a defense to contribution, the court saying: " 'If A recovers judgment against B and C, upon a contract, which judgment is paid by B, the liability of C to B in a subsequent action for contribution is still an open question, because, as to it no issue was

made or tried in the former suit. As between the several defendants therein a joint judgment establishes nothing but their joint liability to the plaintiff. Which of the defendants should pay the entire debt, or what proportion each should pay in case each is partly liable, is still unadjudicated.'

"The . . . [contribution] statute . . . applies the same rule of contribution to judgments rendered in actions on torts."

The telephone company was held to be primarily liable and hence not entitled to any contribution, despite having paid the judgment in full.

■ If liability between joint tortfeasors after judgment turns on indemnity principles, then there is no sound reason why this issue should not be decided by the jury prior to judgment on the basis of relative fault. To do so would not in any way be violating the contribution statute as we have applied it, nor would there be any point in further contribution proceedings between the defendants after judgment because it would not produce any different result than the apportionment already made under the rule announced herein.

## V.

The principle of fairness imbedded within our law compels this adoption of a system for the distribution of joint tort liability on the basis of relative fault.[7] This would apply whether the tortfeasors were joined as defendants by the plaintiff or a third party defendant was added to a cause under our rule 52.11.

■ In either instance the ability of a plaintiff to sue and ultimately collect judgment against his or her choice of tortfeasor need not be impaired. Plaintiff continues free to sue one or more concurrent tortfeasors as he sees fit and nothing that transpires between them as to their relative responsibility can reduce or take away from plaintiff any part of his judgment. Concurrent or joint tortfeasors not sued by plaintiff, however, may now be brought in by third party practice for a determination in due course of their relative part of the responsibility, if such is the case, for the overall injury and damage to the plaintiff. A jury in the same or separate trial at the discretion of the trial court, § 507.040, RSMo 1969; rule 52.11(a); rule 66.02, should be charged with the responsibility for determining a relative distribution of fault and liability for the damages flowing from a tort, which damages will be, along with a finding of negligence, the predicate to apportionment.[8] The interests of plaintiffs are secure; the interests of joint or

7. For other jurisdictions which have adopted this view, *see, e. g., Best v. Yerkes*, 247 Iowa 800, 77 N.W.2d 23 (1956) (equitable distribution applied to active but unintentional negligence of drivers of two other vehicles colliding with plaintiff's vehicle); *Packard v. Whitten*, 274 A.2d 169 (Me.1971) (relative fault among two defendant automobile drivers and a taxicab company against which the two defendants had filed a cross claim, plaintiffs being passengers in the taxicab); *Tolbert v. Gerber Industries, Inc.*, 255 N.W.2d 362 (Minn.1977) (relative culpability of the manufacturer of defective equipment and the installer thereof for injuries to employee of third party); *Kelly v. Long Island Lighting Co.*, 31 N.Y.2d 25, 334 N.Y.S.2d 851, 286 N.E.2d 241 (1972) (application of *Dole, infra,* to damages for death of subcontractor's employee as between the general contractor and owner of construction site); *Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972) (apportionment in indemnity for damages for death of plaintiff's husband between manufacturer which allegedly sold fumigant without warning of its dangers and employer which allegedly permitted employee to use fumigant without following manufacturer's instructions for use); *Pachowitz v. Milwaukee & Suburban Transport Corp.*, 56 Wis.2d 383, 202 N.W.2d 268 (1972) (relative fault between bus company and city when bus passenger was injured upon alighting); *Bielski v. Schulze*, 16 Wis.2d 1, 114 N.W.2d 105 (1962) (automobile collision with relative fault determination between two drivers).

8. Whether or not a separate trial is required of the issues between the third party plaintiff and the third party defendant necessarily depends upon the particular case. Economy of litigation and avoidance of duplication of evidence, time, effort and expense is essential in these days of increasing demands on limited judicial resources, provided it is done without prejudice

concurrent tortfeasors will now be clothed in a rule based upon realism and fairness between them.

The judgment is reversed and the cause remanded to the circuit court for proceedings not inconsistent herewith.

All of the Judges concur.

to the rights of parties. *State ex rel. Laclede Gas Co. v. Godfrey*, 468 S.W.2d 693, 698 (Mo.

App.1971); 3 Moore's Federal Practice § 14.04 (2d ed. 1974).