STATE of Missouri ex rel. Clifford J. STUTZ, Sr., Relator,

v.

The Honorable Robert Lee CAMPBELL, Judge of the Circuit Court of St. Louis County, Missouri, Division No. 15, Respondent.

No. 42241.

Missouri Court of Appeals, Eastern District, Division One.

July 15, 1980.

Jerry A. Klein, Dolgin, Beilenson & Klein, Clayton, for relator.

Ralph K. Soebbing, Riethmann & Soebbing, St. Louis, for respondent.

SNYDER, Judge.

Relator's petition for prohibition seeks to prevent a trial judge from granting a motion to file a third-party petition in a suit for damages for personal injuries resulting from a motor vehicle collision. The third-party plaintiff, driver of one vehicle, had given the proposed third-party defendant, driver of the second vehicle, a full release; but the third-party plaintiff now contends she should be able to join the releasee so that the trial court may hear evidence on apportionment of fault as required by *Missouri Pac. R. Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978). The trial court based its decision to grant the third-party motion on the *Whitehead and Kales* decision which was handed down after the release was signed.

■ Thus the question for decision is: Does a general release given by one joint tortfeasor to another bar the releasor from later joining the releasee as a third-party defendant for purposes of apportionment under the *Whitehead and Kales* decision? The answer is "yes," and for the reasons set forth below, the preliminary writ of prohibition is made absolute.

Clifford J. Stutz brought suit against Sharon M. Tebbe for injuries he sustained when he was a passenger in a motor vehicle driven by the proposed third-party defendant Patricia Kissing.[1] The collision occurred on July 22, 1976. Tebbe issued her general release to Kissing on January 25, 1977. Stutz gave Kissing his covenant not to sue on January 7, 1978 and filed his lawsuit against Tebbe on February 6, 1978.

*Whitehead and Kales, supra,* was handed down on April 28, 1978 and Tebbe sought to file her third-party petition against Kissing on November 13, 1978.

To round out the facts, Kissing is Stutz's daughter and Stutz was paid $15,000 by MFA Insurance Company for his covenant not to sue her. Tebbe was paid $1,950 by MFA Insurance Company for her release of Kissing. MFA's motion to intervene in the suit was granted on September 7, 1979.

The trial court indicated its intention to grant Tebbe's motion to join Kissing as a third-party defendant but allowed Stutz time to file a petition for a writ of prohibition. This court's preliminary writ of prohibition was issued on November 14, 1979.

The relator claims the trial court would exceed its jurisdiction if it allowed Tebbe's third-party petition because the general release issued by Tebbe bars her claim against Kissing for indemnity or apportionment. Relator also asserts that the trial court would exceed its jurisdiction if it should allow the third-party petition, because the correct procedure when a covenant not to sue has been given is to give MAI 7.01 which is mandatory.

First, it must be determined whether the general release given by Tebbe bars her right to contribution from Kissing. If so, an apportionment of fault between the two would be meaningless. A portion of the release signed by Tebbe released Kissing "from any and all claims, demands, damages, actions, causes of action or *suits of any kind of nature whatsoever* and particularly on account of all injuries known or unknown both to person or property which

have resulted or may in the future develop from an accident . . . [Emphasis added]."

There is divided authority as to whether a general release of one co-tortfeasor by another bars the releasor's right to contribution against a co-tortfeasor as provided by § 537.060, RSMo 1978. Annot., 3⌊ A.L.R.3d 1374 (1970).

No Missouri cases were cited by the parties and none have been found which deal directly with the effect of a signed general release upon the right to contribution. But the following cases from other jurisdictions support the view that a general release bars a claim for contribution: *McNair v. Goodwyn,* 262 N.C. 1, 136 S.E.2d 218 (1964); *Norton v. Benjamin,* 220 A.2d 248 (Me. 1966); *Claunch v. Bennett,* 395 S.W.2d 719 (Tex.Civ.App.1965); *Brown v. Eakin,* 50 Del.Super.Ct. 574, 137 A.2d 385 (1957). The view expressed in these cases is preferable to that expressed in the cases cited by respondent, *Restifo v. McDonald,* 426 Pa.Super. 5, 230 A.2d 199 (1967) and *Bisaccio v. Brown,* 366 So.2d 510, 511 (Fla.App.1979), which admittedly support respondent's argument.

The primary rule of construction in interpreting the language of a release is that "the intention of the parties shall govern." *Williams v. Riley,* 243 S.W.2d 122, 124[1, 2] (Mo.App.1951). But that intent is to be determined from the language of the release. The intention of the parties to a release or its legal effect as evidenced by its language cannot be contradicted or varied by parol or extrinsic evidence. *Lugena v. Hanna,* 420 S.W.2d 335, 340[4–6] (Mo.1967). If the plain language of the release declares that there is a release from any and all actions or suits of any kind or nature whatsoever resulting from a particular accident, that language forecloses any speculation as to the intent of the parties because the intent is revealed without question by the words used. As the North Carolina Supreme Court said in *McNair v. Goodwyn, supra,* 136 S.E.2d at page 223:

---

1. The parties will be referred to by name.

"The 'cause of action' for contribution certainly is embraced within the term, 'causes of action *whatsoever.*' The terms of the release clearly include the crossaction for contribution. Where a written agreement is explicit, the court must so declare, irrespective of what either party thought the effect of the contract to be."

Similar reasoning applies here where the release was of "causes of action or suits of any kind or nature whatsoever."

■ The Uniform Contribution Among Tortfeasors Act, which has been adopted in nineteen states, not, however, including Missouri, specifically provides that a release given in good faith discharges the released tortfeasor "from all liability for contribution to any other tortfeasor." Uniform Contribution Among Tortfeasors Act § 4, Uniform Laws Annotated, Vol. 12, page 98. The drafters of the act, therefore, have lent their support also to the view that a general release bars an action for contribution against the releasee. There is good reason for so holding. Settlements should be encouraged. Once a party pays for a proper release, he has a right to rely on a belief that his liability is terminated. In order to avoid litigation, however, and to make certain the effect of a release, it would be wise for drafters of releases, both insurance companies and lawyers, to recite specifically in releases that the person released is released from any liability for contribution or apportionment of fault.

Even though Tebbe has no right of contribution from Kissing, does *Whitehead and Kales, supra,* require that the release be ignored and Kissing be joined as a third-party defendant for purposes of apportionment of the liability?

Before *Whitehead and Kales, supra,* Missouri followed the common law rule that there was no right of indemnity between joint tortfeasors both of whom were actively, or primarily, negligent. *Lewis v. Amchem Products, Inc.,* 510 S.W.2d 46, 48[1–4] (Mo.App.1974); *Central Surety & Insurance Corporation v. Hinton,* 233 Mo.App. 1218, 130 S.W.2d 235, 238[3] (Mo.App.1939); *Kansas City Operating Corp. v. Durwood,* 278 F.2d 354, 358[3] (8th Cir. 1960). Therefore, a defendant could not join a joint tortfeasor by means of a third-party petition if both were actively negligent. *Lewis v. Amchem Products, Inc., supra.* If, however, both were joined by the plaintiff, the defendants were subject to contribution as provided by § 537.060, RSMo 1978. Thus, the plaintiff, in effect, decided by his joinder, or failure to join, certain parties as defendants, whether there would be contribution or indemnity among the joint tortfeasors.

The *Whitehead and Kales* decision recognized this anomaly and abolished the distinction between active and passive, or primary and secondary, negligence and changed the law so as to allow joinder of joint tortfeasors, whether active or passive, by means of a third-party petition.

The court said:

"The principle of fairness imbedded within our laws compels this adoption of a system for the distribution of joint tort liability on the basis of relative fault. This would apply whether the tortfeasors were joined as defendants by the plaintiff or a third party defendant was added to a cause under our rule 52.11. [Footnote omitted]."

*Missouri Pac. R. Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466, 474 (Mo. banc 1978).

To permit the joinder of Kissing here would be meaningless, however, even under the changed law. The decision in *Whitehead and Kales, supra,* did not change the law permitting a plaintiff to sue one of several joint tortfeasors and collect the entire amount of his recovery from the single defendant. *Whitehead and Kales, supra,* 474[5–7]. This being the case, it would serve no purpose to join Kissing because the entire amount of the judgment, if any, could be collected from Tebbe. *Whitehead and Kales* did not affect a plaintiff's rights, but provided only for the apportionment of fault among joint tortfeasors so as to determine the amount of contribution available to the joint tortfeasor who pays the judgment, provided always that the joint tortfeasor is entitled to contribution. Here, Tebbe would be unable to recover any con-

tribution from Kissing because of her release.

The precedent established in the recent cases interpreting *Whitehead and Kales, supra*, also requires finding the respondent would exceed his jurisdiction if he were to grant Tebbe's motion for leave to file a third-party petition because of the *Whitehead and Kales* decision. *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferriss*, 588 S.W.2d 489 (Mo. banc 1979); *Martinez v. Lankster*, 595 S.W.2d 316 (Mo.App.1980).

In *State ex rel. Maryland Heights*, the Missouri Supreme Court held that an employer, immunized from liability by the Workmen's Compensation Act, § 287.120.1, RSMo 1978, could not be joined as a third-party defendant for purposes of apportionment under the *Whitehead and Kales* decision.

In *Martinez v. Lankster, supra*, plaintiff wife, who was a passenger in an automobile driven by her husband, sued the driver of a second automobile for alleged injuries arising out of a collision between the two cars. The driver of the second car was barred from joining plaintiff's husband as a third-party defendant for apportionment purposes on the ground of interspousal immunity.

■ The general release of all claims given by Tebbe to Kissing has the same effect as the immunity from liability provided by the Workmen's Compensation Act for an employer, and the interspousal immunity dictated by present Missouri law. The positions of the immune employer in the workmen's compensation case, the spouse, and the releasee in the case under review are

similar. Neither a tortfeasor employer immunized by the Workmen's Compensation Act nor a joint tortfeasor spouse of a plaintiff can be joined as third-party defendants for apportionment purposes under *Whitehead and Kales, supra*. Likewise, the joint tortfeasor, Kissing, in the case at bar may not be joined as a third-party defendant for apportionment purposes because she was given a full release by defendant Tebbe.[2]

■ Respondent bases his argument in favor of allowing the joinder of Kissing as a third-party defendant on the intent of the parties when they signed the release, arguing that because *Whitehead and Kales, supra*, had not been handed down at the time the release was signed the parties could not have contemplated a possible apportionment of liability for Stutz's injuries between the two.

What has been said about Tebbe's right to contribution disposes of this argument. Any right to contribution she may have had was barred by the release both before and after the decision in *Whitehead and Kales, supra*. Before *Whitehead and Kales*, Kissing could not have been joined both because of the release and because there was no right of indemnity. Since the rule in *Whitehead and Kales* she may not be joined because apportionment of fault under the facts of this case would be futile, there being no right to contribution enforceable by the third-party plaintiff whether or not Kissing is joined.

Relator asserts in his other point that the respondent would exceed his jurisdiction if he allowed Kissing to be joined as a third-party defendant because the use of MAI 7.01[3] is the accepted and correct procedure

---

**2.** What happens in a fact situation in which there are more than two joint tortfeasors, only one of whom has been released? There it might be desirable to allow the joinder of the releasee only for the purpose of apportioning the fault of the two or more unreleased parties. However, there were several third-party defendants in *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferriss, supra*. Notwithstanding the number of defendants, the Missouri Supreme Court, although the court

did not address this point directly, ruled that the non-liable employer should not be joined. And query: Why should the released party be subjected to the expense and aggravation of participation in a lawsuit when he has purchased his peace?

**3.** MAI 7.01: "Damages—Deduction for Admitted settlement with Joint Tort-Feasor

After you have determined such sum, you must deduct _____ dollars which (*name of*

for instructing a jury when a settlement is made for a covenant not to sue. The giving of MAI 7.01 is mandatory. Rule 70.02; Notes on Use, MAI 7.01. Obviously, however, true apportionment would not be assured through the giving of MAI 7.01 because the amount given for the covenant not to sue may or may not be commensurate with the degree of fault of the person to whom the covenant was given. It is unnecessary to rule on this point because the full release given by Tebbe resolves the issue.

Because the respondent would exceed his jurisdiction if he granted Tebbe's motion to join Kissing as a third-party defendant, the preliminary rule in prohibition is made absolute.

STEWART, P. J., and WEIER, J., concur.

*joint tort-feasor*) has paid plaintiff. In the event such payment is equal to or exceeds the amount of plaintiff's damage then your verdict must be for defendant."